## SARAH A. WIMBERLY V. OSCAR PABST.

(Case No. 1084.)

1. LAND CERTIFICATE — CONSTRUCTIVE NOTICE. — A purchaser for value, from or under a patentee, is not chargeable with constructive notice of latent defects in the transfer of the certificate upon which the patent issued, when there is nothing upon the face of the patent which would put a prudent man on such inquiry as would lead to notice of such defects.

ERROR from Hunt. Tried below before the Hon. Green J. Clark.

To the case as stated in the opinion, the following may be added:

Pabst, the defendant, testified that he had never heard of the appellant until this suit commenced; that he purchased the land in controversy in January, 1870, and procured the services of an attorney to investigate the title to the same; that he never knew of any adverse claim; that he purchased in good faith, paying $400 gold for the land and another tract.

*J. G. Mathews* and *Richard B. Semple*, for plaintiffs in error.

I. The premises in controversy were the community property of William Richey and his wife, and therefore the sale by Richey to Lewis Moody could only pass

Richey's one-half interest in the certificate, said sale being made after said Richey was divorced from plaintiff in error. Cannon *v.* Murphy, 31 Tex., 405; Carter *v.* Wise, 39 Tex., 273; Fishback *v.* Young, 19 Tex., 515.

II. Defendant could not have been an innocent purchaser in good faith. The recitals in the certificate show that it was issued to Richey as a married man. The number of acres (six hundred and forty) called for by the certificate gave notice that it was issued to a married man. Willis *v.* Gay, 48 Tex., 463. The good faith of the purchaser cannot invest him with title where his vendor had no title to convey. Dodd & Co. *v.* Arnold, 28 Tex., 101; Johnson *v.* Harrison, 48 Tex., 257.

III. The judgment in the suit for divorce from the bonds of matrimony in 1851 was not *res adjudicata* as to the property rights of the parties. This is whereon the court below rested its decision. Plaintiff in error cited Whetstone *v.* Coffey, 48 Tex., 269 (which was tried before the same judge, and in which his erroneous views on this question were upset), as decisive of the case at bar. The court was of the opinion that the case cited did not decide the question whether this maxim applied alike to personal property as to real estate. It was the opinion of the court that a distinction holds as regards personalty. Oldham *v.* McIver, 49 Tex., 572; Horton *v.* Hamilton, 20 Tex., 614; 1 Greenleaf on Evidence, § 532. Indeed, we regard the case of Whetstone *v.* Coffey as decisive of this case. Furthermore, at the date of the decree of divorce, the certificate had not been procured, and was not therefore the subject of partition.

*T. D. Montrose*, for defendant in error.

I. Defendant was an innocent purchaser in good faith. Fraim *v.* Frederick, 32 Tex., 308; Neal *v.* Sears, 31 Tex., 115; Wethered *v.* Boon, 17 Tex., 143.

II. The certificate was personal property, and the stat-

ute of limitations of two years commenced to run against plaintiff from the date of its issuance in the spring of 1857. On the 5th day of May, 1857, more than twenty-three years since the certificate by virtue of which the land in controversy was located was issued to William Richey, and on the same day transferred to Lewis Moody for $160, and was afterwards transferred to McCamant, and so on down to the defendant by regular chain of transfer. Peevy *v.* Hurt, 32 Tex., 151; Andrews *v.* Smithwick, 20 Tex., 118; R. S., p. 464, art. 3203.

III. Personal property in the possession of William Richey after the decree of divorce was at least *prima facie* his own property; he holding the legal title could make a valid sale. Wethered *v.* Boon, 17 Tex., 143; Case *v.* Jennings, 17 Tex., 673; Peevy *v.* Hurt, 32 Tex., 151.

BONNER, ASSOCIATE JUSTICE.— In the year 1848 William Richey and his then wife, Sarah A. Richey, now Wimberly, and who was plaintiff below, immigrated into Mercer's colony, and remained there a sufficient length of time to have entitled them, under statutes subsequently passed, to a certificate for six hundred and forty acres of land. On September 21, 1851, they were divorced by decree of the district court of Hunt county. Subsequently, May 5, 1857, William Richey, by reason of having been such citizen of Mercer's colony and a married man, obtained a certificate for six hundred and forty acres of land by virtue of statutes passed subsequently to the divorce; single men being entitled to only three hundred and twenty acres. This certificate, on the day of its issuance, was transferred by William Richey to Lewis Moody, and was on May 27 thereafter, transferred by Moody to James M. McCamant, to whom, as assignee, patent issued June 27, 1857, for the three hundred and twenty acres of land in controversy, being half the land

called for in the certificate. Subsequently to the issuance of the patent, this land was, by sundry mesne conveyances, sold and conveyed, until it was purchased by Oscar Pabst, defendant below, for a valuable consideration, by deed of date January 24, 1870. These several deeds seem to have been duly recorded. Mrs. Wimberly claims an undivided one-half interest in the land in controversy, by virtue of her former marriage and community of interest with William Richey. She instituted this suit of trespass to try title and for partition, against defendant Pabst, September 28, 1877, more than twenty years after the issuance of the certificate and patent. On the trial below a jury was waived and judgment rendered by the court for defendant Pabst.

The certificate was issued to William Richey, not for three hundred and twenty acres only, but for six hundred and forty, the increased quantity to which he was entitled by reason of his having been a married man, and this was recited upon its face. It was therefore the community property of himself and the plaintiff, and not his separate property. Hodge v. Donald, *supra;* Cannon v. Murphy, 31 Tex., 405; Carter v. Wise, 39 Tex., 273. Hence the plaintiff would be entitled to one-half community interest therein, unless the defense relied upon should prevail.

The mere fact that no partition was made of this property in the suit for divorce would not defeat the claim of the wife, and particularly when, as in this case, the property at the date of the divorce suit was not *in esse.* Whetstone v. Coffey, 48 Tex., 269; Jones v. Johnson, *supra.*

Defendant Pabst pleaded adverse possession by those under whom he claims, of the certificate upon which the patent issued, for more than two years before the institution of the suit. This plea was based upon repeated decisions of this court, that a certificate for land is, until located, a chattel, and that a right of action for its deten-

tion and conversion would be barred in two years. R. S., 3203.

The certificate, within less than two years from the date of its issuance, was merged into the patent, and lost its character as personal property and partook of the realty. It does not become necessary to decide whether this change in the character of the property did not also change the character of limitations which was applicable, from that pertaining to personal to that pertaining to real property. The following authorities, however, are cited as bearing upon this question: Smithwick v. Andrews, 20 Tex., 41; Same Case, 24 Tex., 494; Andrews v. Smithwick, 34 Tex., 544; Ross v. Earley, 39 Tex., 390; Simpson v. Chapman, 45 Tex., 561.

As the land was patented, not to the husband but to his assignee, then clearly the interest of Mrs. Wimberly was an equitable and not a legal one; and it would seem that under the evidence the plea of stale demand might very properly have been interposed, as more than twenty years had elapsed from the date of the patent until the institution of the suit.

Defendant Pabst also pleaded that he was a *bona fide* purchaser for a valuable consideration without notice.

Under this plea we are not called on to decide whether an erroneous decision of the commissioner of the general land office upon the validity or genuineness of the transfer to the certificate would be conclusive of the rights of Mrs. Wimberly (Mitchell v. Bass, 26 Tex., 376), but whether the defendant, under the circumstances of this case, should be protected as such *bona fide* purchaser without notice.

Under the testimony, the defendant paid a valuable consideration for the land, and did not have actual notice of the claim of plaintiff. The precise questions then upon this issue are these: Was the defendant required to go behind the patent, and examine into the title of the certificate upon which it issued? And having failed to do this, was

he chargeable with constructive notice of the claim of plaintiff, by reason of the recitals in the certificate?

Upon the reason that the purchaser is entitled to see all the muniments of his title, and is therefore presumed to have seen them, is founded the rule that he is bound by recitals in his chain of title which would put a prudent man upon such inquiry as would lead to the truth.

The converse of this proposition follows: that, if the recitals are not sufficient to put a prudent man upon this inquiry, then they of themselves do not constitute constructive notice.

To the public generally, a patent to land having been issued by authority of the state, carries with it a high degree of faith and credit, as the beginning link in the legal chain upon which all after-acquired title can securely depend. When, therefore, a subsequent purchase is made upon the faith of a patent, regular upon its face, public policy requires that it should constitute an important element in the question of the good faith of the transaction, and should turn the scale in its favor, except in cases of actual notice, or when the law would impute constructive notice of some defect sufficient to defeat it.

A brief review of a few of the leading cases upon this question will serve to elucidate the one under consideration. In Brush v. Ware, 15 Peters, 93, the patent issued upon a claim to land to which John Hockaday was entitled, by virtue of having been a continental officer. Hockaday having died, Ware, one of the executors of his will, by which he made disposition of his personal property only, obtained from the executive council of Virginia a certificate of the right of Hockaday to the land. On this certificate, Ladd, as the assignee of Ware as such executor, obtained four land warrants. One of these, through assignments, subsequently became the property of Henry Brush, who, under entry made by Hoffman, a prior assignee, obtained a patent to the land. It will be noticed in this connection, that, unlike the case now

before the court, Brush was the owner of the warrant before and at the time of the issuance of the patent. The suit was brought by the heirs of Hockaday against Brush, and they recovered the land on the ground that Ware, as executor under a will which disposed of personal property only, had no power to make the sale; and hence that the title remained in the heirs. It must be remembered that the land warrant in that case was treated as real, and not, as with us, personal property. The question there was, whether Brush was chargeable with constructive notice, and it was decided that he was, because the recitals in the chain of title under which he held the warrant showed that this title came through Ware as the executor of Hockaday, and that he was bound to take notice of the powers of Ware under the will.

In support of that decision the case of Reeder *v.* Barr, 4 Ohio, 458, was cited. In the latter case, the patent issued to Newell *as assignee of the administrator of Hanson Reeder,* and it was held that the recital in the patent itself showed that the title came through an administrator — a party who, under their law, had no power to make title to real property.

The above two cases and others came under review in Bell *v.* Duncan, 11 Ohio (Stanton), 192, and it was shown that they did not apply to a case like the present; that in Brush *v.* Ware, Brush, being an assignee before the patent issued, had but an equitable interest, and that his chain of title thereto would disclose a want of power in Ware as executor to make the title; and that in Reeder *v.* Barr, although the purchase was made after the patent issued, yet upon the face of the patent itself there was a recital which showed that the chain of title to Newell, the patentee, was subject to a like defect of want of power.

In the above case of Bell *v.* Duncan, it is laid down as the rule in other cases, that when the patent recites as-

signments by persons competent to convey, there is no presumptive notice, to one who derives title under the patent, of latent defects in the assignments, and that he can avail himself of the defense of a *bona fide* purchaser for value. 11 Ohio, 192.

In the present case, the patent recites that it grants to James M. McCamant, assignee of William Richey, three hundred and twenty acres of land, by virtue of Mercer's colony certificate, issued to him by the district court of Hunt county, May 5, 1857, transferred to Lewis Moody on the same day, and transferred to James M. McCamant on May 25, thereafter. There is nothing on the face of the patent to show that it issued to William Richey as a married man, but on the contrary, it appears to have been issued for an amount only to which as a single man he was entitled, and that therefore he had full power to make the assignment recited.

If, under these circumstances, a purchaser from the patentee must at his peril examine into the old records of the general land office to ascertain if there be any latent defects in the chain of title to the certificate upon which the patent issues, then this, the highest character of our land titles, will prove but "a mockery, a delusion, and a snare."

Whatever may be the rule as to the immediate patentee himself, we are clearly of opinion that public convenience, and the free alienation and security of our land titles, demand that a purchaser for value from or under him should not be chargeable with constructive notice by the patent of latent defects in the transfer of the certificate upon which it issued, when there is nothing upon the face of the patent which would put a prudent man upon such inquiry as would lead to notice of those defects.

JUDGMENT AFFIRMED.

[Opinion delivered November 15, 1881.]