RODERICK McDONALD, SR., ET AL. V. WYATT HANKS ET AL.

Decided October 30, 1908.

**1.—Secondary Evidence—Carbon Copy.**

There is no logical difference between a carbon copy and a letter press copy of a letter; they are both secondary evidence and, therefore not admissible in evidence without accounting for the original.

**2.—Same—Lost Deed—Predicate.**

Letters received in reply to letters written in making search for a lost deed, are material and competent evidence to prove that diligence had been

used to obtain possession of the original deed, and thus lay a predicate for the introduction of secondary evidence of the execution and contents of the missing deed. Proof of the genuineness of the signatures to the letters received need not be made; this will be presumed. The material enquiry is, had reasonable diligence been used to get the missing deed? Evidence considered, and held to constitute a sufficient predicate for the introduction of secondary evidence of the execution and contents of the lost deed.

### 3.—Same.

In an effort to lay a predicate for the admission of secondary evidence of the execution and contents of a lost deed, facts considered, and held to render admissible in evidence a certificate of a county clerk, dated in 1847 and before the deed records of the county were destroyed by fire, to the effect that the deed in question was of record in his office. The sufficiency of the predicate in such cases is left to the sound, though not uncontrolled, discretion of the trial court.

### 4.—Notice of Adverse Claim—Evidence.

Upon an issue of innocent purchaser of land without notice of an adverse claim, evidence as to recitals in deeds and in a judgment between parties under whom defendants claim, considered, and held sufficient to support a finding that defendants were not purchasers without notice.

### 5.—Power of Attorney—Description of Land—Existence Presumed.

A power of attorney described the land authorized to be sold as, "A certain tract situated in L. County, a part of the F. headright, my interest in said survey being about 2000 acres, as will more fully appear by reference to the county records of L. County." Held, not void for want of proper description, although the interest of the principal in the league referred to amounted to only 1700 acres. Extrinsic evidence was admissible to show what land the principal owned in the league named. After the lapse of thirty years the existence of a power of attorney will be presumed when the purchaser takes possession of the land under the deed.

### 6.—Deed—Sufficient Description.

A deed described the land conveyed as "640 acres situated in L. County, east of the T. river, about 25 miles above L., and out of the north one-half of I. F. headright league, it being the E. end of 1,700 acres sold by the aforesaid F. to W. D. S., and conveyed to me, W. H., by power of attorney irrevocable by the said S. as will appear from the records of L. County." Held, a sufficient description to identify the land with the aid of extrinsic evidence, which was admissible.

### 7.—Lost Deed—Execution—Evidence.

Evidence as to the execution of a lost deed considered, and held sufficient to support a finding that the deed was executed.

### 8.—Improper Evidence—Trial Without Jury.

The erroneous admission of letters in evidence is not reversible error when the cause is tried before the court without a jury.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*L. B. Moody,* for appellants.—A carbon copy of a letter is secondary evidence, and is not admissible without laying a proper predicate and accounting for the absence of the original, and no effort having been made to lay said predicate or to account for the absence of the originals of the letters, said copies ought not to have been admitted in evidence. Thompson-Houston Electric Company v. Berg, 10 Texas Civ. App., 200; Texas Mining & Improvement Company v. Arkell, 29 S. W., 816.

The court erred in admitting in evidence the certificate of the county

clerk of Liberty County, over the objections of the defendants. Vandergriff v. Piercy, 59 Texas, 372; Bounds v. Little, 75 Texas, 321; Mills v. Herndon, 60 Texas, 357; Dunn v. Choate, 4 Texas, 18; Baldwin v. Goldfrank, 9 Texas Civ. App., 269; Trimble v. Edwards, 84 Texas, 500; 1 Green Ev., sec. 558.

In order to constitute notice, the recitals in a chain of title must not only be sufficient to put a reasonably prudent person upon inquiry, but it must appear further that had such inquiry been prosecuted with reasonable diligence, it would have resulted in learning of the existence of the alleged unrecorded deed from Isaiah Fields to Wm. D. Smith, and inasmuch as it is not made to appear that such inquiry would have resulted in the acquisition of the knowledge by the defendants that such a deed had existed, it was error for the court to hold that such recitals in the chain of title constituted notice to the defendants that such a deed had existed. Evans v. Reeves, 6 Texas Civ. App., 254; College Park Electric Belt Line v. Ide, 15 Texas Civ. App., 273; Sickles v. White, 66 Texas, 179, 180; Goldman v. Blum, 58 Texas, 639, 640.

The recitals in a chain of title, even when sufficient to constitute notice, will constitute notice only as to the property held under the chain of title in which such recitals are contained, and such recitals can not be made to apply to other property, even though purchased by the same grantee, but under a different chain of title, in which no such recitals are contained. In the case at bar, 320 acres of the land in controversy are held by the defendants under a chain of title in which there are recitals concerning a deed from Isaiah Fields to W. D. Smith; this is the 320 acres the title of which comes through S. B. Cooper; the remaining 320 acres of the land in controversy is held under a chain of title which contains no such recitals, it was therefore error for the court to hold that the recitals in the chain of title to the Cooper 320 acres could be applied to the entire 640 acres in controversy. Wade on Notice, secs. 314, 315 (1878 ed.).

*Baldwin & Christian,* for appellees.—A carbon copy of a letter is a duplicate or counterpart of the original and is admissible in evidence without the necessity of producing or accounting for the absence of the original. 17 Cyc. of Law & Pro., page 517; 1 Greenleaf on Evidence, sec. 84, and note 1; McKelvey on Evidence, sec. 256; 20 American Digest, secs. 564-566; Welder v. Carroll, 29 Texas, 318; Westbrook v. Fulton, 79 Ala., 513; Anglo-American Packing Co. v. Cannon, 31 Fed., 314; Hubbard v. Russell, 24 Barb., 404; Gardner v. Eberhart, 82 Ill., 317; Weaver v. Shipley, 127 Ind., 535; Totten v. Bucy, 57 Md., 446; Cleveland, etc., Ry. Co. v. Perkins, 17 Mich., 299; Niagara Fire Insurance Co. v. Whittaker, 21 Wis., 334; Zipp v. Colchester Rubber Co., 80 N. W., 367; Waterman v. Davis, 66 Vt., 83, 28 Atlantic Rep., 664.

All that is required of a party before allowing him to introduce secondary evidence of the contents of a deed, when there is no suspicion thrown upon the same and no reason shown why such party should fail or refuse to offer the same in evidence if in his possession, is that he merely establish a reasonable presumption of the loss or destruction of the instrument. 17 Cyclopedia of Law & Pro., pages 543 et seq.; Greenleaf on Evidence, sec. 558; McKelvey on Evidence, pages 346-347;

White v. Burney, 27 Texas, 51; Evans v. Womack, 48 Texas, 233; Parks v. Caudle, 58 Texas, 220; Ruby v. Von Valkenberg, 72 Texas, 466; Waggoner v. Alvord, 81 Texas, 368; Henry v. Whitaker, 82 Texas, 8; Walker v. Pittman, 18 Texas Civ. App., 522; Smith v. Cavitt, 20 Texas Civ. App., 560; Daniels v. Creekmore, 7 Texas Civ. App., 575.

A sufficient predicate, for the introduction of secondary evidence and the contents of a lost or destroyed deed, is laid where it is made to appear that there is no reasonable probability or suspicion that the original deed is designedly withheld or suppressed.  17 Cyc. of Law & Pro., page 551; Renner v. Bank of Columbia, 22 U. S. (9 Wheat.), 581; 6 Lawyers' edition, 169; Robards v. McLean, 30 N. C., 522.

A reference to, or recital of, in grantee's deed or in a judgment through which he deraigns title, another deed, which, in turn, refers to and recites another deed, and such last deed so referred to and recited refers to and recites still another deed, such grantee is charged with constructive, or presumptive, notice of the existence and contents of each and all of said deeds so recited and referred to.  2 Pomeroy's Equity Jurisprudence, 3d ed., secs. 626-632; Wade on Notice, secs. 309-313, inclusive; also secs. 317, 318, 322; 2 Sayles on Real Estate, sec. 1076; Christian v. Hughes, 12 Texas Civ. App., 626; Joy v. City of St. Louis, 138 U. S., 1; 34 Lawyers' ed., 853-4; Cook v. Caswell, 81 Texas, 683; Hill v. Moore, 85 Texas, 346; Halfin v. Winkleman, 83 Texas, 168.

When fact or circumstance which is brought to the knowledge of a party is such as to put a reasonably prudent man upon inquiry, such party is charged with notice of the main fact which might be discovered by the exercise of proper diligence in pursuing the inquiry.  Peters v. Clements, 46 Texas, 123; Jackson v. Elliott, 49 Texas, 68; John v. Battle, 58 Texas, 596; Bryan v. Crump, 55 Texas, 15; Orme v. Roberts, 33 Texas, 772; Powell v. Haley, 28 Texas, 57; Walton v. Compton, 28 Texas, 577; Goldman v. Blum, 58 Texas, 639; Sickles v. White, 66 Texas, 178; Maupin on Marketable Title, page 172; Wade on Notice, section 313; Webb on Record Title, sections 219, 223.

If appellants are charged with notice of the claim and title of appellees to the 320 acres of land, to which the appellants deraign title through S. B. Cooper, they are also charged with notice of appellees' claim and title to the 320 acres to which appellants deraign title through George T. Hanks, for the reason that both the Cooper and Hanks tracts are undivided interests in the 640 acres conveyed to Wyatt Hanks, Jr., and Richards S. Hanks, through whom appellees deraign their title to the entire 640 acres in controversy, and it is a matter of impossibility to have notice, either actual or constructive, of the one without having equal notice of the other.

The description of the land conveyed by the deed from William D. Smith, acting by his agent and attorney in fact, Wyatt Hanks, Sr., to Wyatt Hanks, Jr., and Richard S. Hanks, is amply sufficient to identify the 640 acres thereby intended to be conveyed, and said deed was properly admitted in evidence.  Turner v. Crane, 19 Texas Civ. App., 373; Day v. Needham, 2 Texas Civ. App., 680; Graham v. Billings (Tex. Civ.), 51 S. W., 647; Brokel v. McKechnie, 69 Texas, 32.

REESE, ASSOCIATE JUSTICE.—This is a suit in trespass to try title

by Wyatt Hanks et al. against Roderick McDonald, Sr., Roderick McDonald, Jr., and Arch McDonald for a tract of 640 acres of land, a part of the Isaiah Fields league, and a part of a tract of 1700 acres on the north side of said league, claimed to have been sold by said Fields to one, W. D. Smith. The defendant Roderick McDonald, Jr., disclaimed. The other two defendants pleaded not guilty.

Plaintiffs are heirs of Wyatt Hanks, Jr., and Richard S. Hanks to whom the land was conveyed by Wyatt Hanks, Sr., under an irrevocable power of attorney from W. D. Smith in 1857. On the trial plaintiffs undertook to establish by circumstantial evidence the execution, about 1840, of a deed from Isaiah Fields, the original grantee, of the 1700 acres. Defendants undertook to show, besides other defenses, by like evidence the execution by R. S. Hanks to J. K. Hanks, under whom they claim title, of a deed for his interest in the tract. They also defend on the ground that plaintiffs failed to show title out of the original grantee, and that they are innocent purchasers without notice.

The case was tried without a jury and resulted in a judgment for plaintiffs, from which defendants appeal.

The following conclusions of fact of the trial court, prepared and filed at the request of appellants, is adopted as a substantially correct finding of the facts as established by the evidence:

"1. In December, 1874, all the records of Liberty County, Texas, affecting the title to lands were destroyed by fire, and the present public records of said county consist solely of such instruments as have been recorded subsequent to the date of said fire.

"2. Some time prior to the 13th day of June, 1838, Isaiah S. Fields and wife, Sarah Fields, settled in this government and by reason of said settlement became entitled to a league of land, which was granted to them on the 13th day of June, 1838, and said headright league is located in Liberty County, Texas, and the land in controversy is carved out of said land.

"3. Some time prior to the 23d day of March, 1847, Isaiah S. Fields conveyed to Wm. D. Smith 1700 acres off of the north side of his headright league of land. This deed is not of record in Liberty County, Texas, neither was the original offered in evidence on the trial of this cause, but, from the recitals in other conveyances read in evidence as well as from other facts established on the trial of this cause, I conclude that said deed was executed, and was sufficient to pass to Wm. D. Smith the title to 1700 acres off of the north side of the Isaiah S. Fields league. This embraces a strip of land 1025 varas wide, north and south, extending across the entire league from the east to the west.

"4. On March 23, 1847, Wm. D. Smith executed an irrevocable power of attorney to Wyatt Hanks, Sr., authorizing said Hanks to sell, convey and dispose of all his interest in the Isaiah S. Fields league of land and to appropriate the proceeds thereof, etc.

"5. On September 25, 1857, Wyatt Hanks, Sr., as attorney in fact for Wm. D. Smith, executed a general warranty deed to Wyatt Hanks, Jr., and Richard S. Hanks, by which he conveyed to them 640 acres of land out of the north one-half of the Isaiah S. Fields headright league, 'it being the east end of 1700 acres sold by the aforesaid Fields to Wm. D. Smith, and conveyed to me, Wyatt Hanks, by the aforesaid

Smith, as will appear by records of Liberty County, Texas." This deed was sufficient also to pass to Wyatt Hanks, Jr., and Richard S. Hanks the title to 640 acres of land off of the east end of the 1700-acre tract, which is the 640 acres involved in this suit and described in plaintiffs' petition.

"6. Wyatt Hanks, Jr., died in the year 1863; Richard S. Hanks died in the year 1873, and the plaintiffs in this case are their descendants and the legal heirs of said Wyatt Hanks, Jr., and Richard S. Hanks, except the plaintiff, Laura Cox, who is the surviving wife of Wyatt Hanks, Jr.

"7. Isaiah S. Fields and his wife, Sarah Fields, settled upon their league of land in a very early day and they were living upon their league as early as 1854. He continued to live upon the same up to the time of his death, which occurred some time in the 60s. His wife, Sarah Fields, continued to live upon the same up to the time of her death, which occurred after the year 1890. They neither lived upon nor claimed the 1700 acres off of the north side of the league, and they never at any time asserted any title or claim to this tract of land. They knew it was being claimed by Wyatt Hanks, Sr., and those deraigning title through him. They recognized and acquiesced in the claim made by Wyatt Hanks, Sr., to this tract of land.

"8. Isaiah S. Fields and wife had born unto them six children, their names being Sophronia Fields, Serena Fields, Selina Fields, Randolph R. Fields, Vernal Fields and Harrison Fields. Harrison Fields was never married, and died without issue. Sophronia Fields married John W. Stevens, and had two children, J. R. Stevens and O. H. Stevens. Serena Fields married H. V. Akins. Selina Fields married Pipkins. The family history of these people is set out fully in the agreement of the attorneys filed herein, but I only deem it necessary to point out the above facts with reference to this family history in disposing of this case. Sarah Fields, the surviving wife of Isaiah S. Fields, and two of her children, Serena Akins and Randolph R. Fields, and a grandchild, J. R. Stevens, were parties to the suit of Sarah Fields et al. v. S. B. Cooper et al., hereinafter mentioned. The other legal heirs of Isaiah S. Fields were not parties to that suit. However, Selina Pipkins executed a deed to A. B. Green to the 1700 acres described in that judgment, and A. B. Green conveyed the 640 acres involved in this suit to one of the plaintiffs, John F. Hanks, but in disposing of this case I do not consider these conveyances, as will appear from my other findings that the plaintiffs were the legal owners of the 640 acres of land, at the time of this conveyance.

"9. In the year 1854, Wyatt Hanks, Sr., who was then claiming to be the legal owner of the 1700 acres of land that had been conveyed by Isaiah S. Fields to Wm. D. Smith, went into actual possession of said tract of land. He built a house thereon and made other improvements thereon, putting a part thereof in cultivation. He claimed to be the legal owner thereof, and used and cultivated the ground up to the time of his death, which occurred about the year 1863. During all of this time Isaiah S. Fields and his wife, Sarah Fields, lived upon the same league of land within about a mile or a mile and a half of the home

of Wyatt Hanks, Sr.  They knew he was living upon the land, and was claiming the same.  They recognized his title thereto.

"I find in paragraph 5 hereof, that on September 25, 1857, Wyatt Hanks, Sr., conveyed to his two sons, Wyatt Hanks, Jr., and Richard S. Hanks 640 acres of said 1700-acre tract off of the east end thereof; and afterwards, to wit, on August 25, 1859, Wyatt Hanks, Sr., conveyed to another one of his sons, George T. Hanks, 703 acres off of the west end of the 1700-acre tract, described it by metes and bounds, and this deed recites that it is a part of the tract of land conveyed by Isaiah S. Fields to Wm. D. Smith by deed bearing date the 9th day of September, 1840, and recorded in Liberty County, Texas, in book "E," page 88, more fully described by metes and bounds as follows, to wit:  (Then follows description by metes and bounds.)  This description, together with the description given of the 1700 acres in the judgment rendered in the case of Sarah Fields et al. v. S. B. Cooper et al., and other facts in evidence, is sufficient to fully identify the 1700 acres of land conveyed by Fields to Smith.  George T. Hanks took actual possession of this tract; continued to live upon the same, use and cultivate the same from that time down to the time of his death, and his son, George T. Hanks, Jr., who was his sole and only heir, was in possession of a part thereof at the time of this trial.

"Wyatt Hanks, Jr., and Richard S. Hanks never took actual possession of their 640 acres, and the same has never been actually occupied since it was severed from the 1700-acre tract by the conveyance from Wyatt Hanks, Sr., to them, but they paid taxes upon the same during their lifetime.  Wyatt Hanks, Jr., having died in 1863, and the plaintiff in this case, Laura Cox, who was the surviving wife of Wyatt Hanks, Jr., paid the taxes upon this land for a long number of years after her husband's death.  Richard S. Hanks died in 1873.  They and their heirs have always asserted title to this 640-acre tract, and their title was always recognized by George T. Hanks.

"10.  On the 14th day of August, 1890, there was rendered in the District Court of Liberty County, Texas, a judgment in the cause of Sarah Fields et al. v. S. B. Cooper et al., by which the plaintiffs in that cause, Randolph R. Fields, J. R. Stevens, Sarah Fields and Serena Akins, recovered a judgment against George T. Hanks, W. B. Denson and S. B. Cooper for all of the Isaiah S. Fields league, except 1700 acres off of the north side of said league which was decreed to the defendants, and is described by metes and bounds as follows, to wit:

"Beginning on the E. Bank of the Trinity River, at the N. W. corner of the Isaiah Fields league, a mound and a post, from which a Sweet Gum 20 in. dia. brs. S. 10 deg. E. 7 5/10 vrs. dist. and a White Oak 20 in. dia. brs. N. 31 deg. W. 7 vrs.; Thence down said river, with its meanderings to the N. W. cor. of a survey of a tract of land deeded by Isaiah Fields to his wife and children, a post from which a White Oak 16 in. in dia. brs. S. 33 deg. a White Oak E. 1 vr. mkd. thus, "L. S. F." and a White Oak 12 in. in dia. brs. S. 20 deg. W. 2 vrs. dist.; Thence N. 89 deg. E. with said sur. a part of the distance to the E. B. line of said league; Thence north 1 deg. W. with said E. line 1025 vrs. to the N. E. cor. of said league; thence with the N. line of said league and part of the distance with Pierre Blanchette league, to the beginning; con-

taining 1700 acres, more or less, and of the 1700 acres there is allotted to the defendant, W. B. Denson, 250 acres, being the same heretofore conveyed to him by G. T. Hanks; and of the said 1700 acres, there is allotted to the defendant S. B. Cooper 320 acres, being the same conveyed to him by J. K. Hanks on the 16th day of August, 1881, and the balance of said 1700 acres is allotted to the defendant, George T. Hanks."

"11.  On August 16, 1881, John K. Hanks executed a deed to S. B. Cooper, which is the one mentioned and recited in the judgment described in paragraph 10 hereof, by which he conveyed to Cooper 320 acres of land, part of the Isaiah S. Fields league.  He described the land in that deed as follows, to wit:

"Being one-half of the tract of land sold jointly to R. S. Hanks and Wyatt Hanks, Jr., by Wyatt Hanks, Sr., attorney in fact for Wm. D. Smith, by deed bearing date the 17th day of September, 1857, and duly recorded in the office of the county clerk of Liberty County, Texas, on the 20th day of August, 1858, the same land herein conveyed being the one-half of said 640 acres conveyed as aforesaid, and being the same conveyed to me by R. S. Hanks by deed bearing date, the 19th day of December, 1860."

"I find that the deed recited in this conveyance from Richard S. Hanks to John K. Hanks was never executed, as recited therein, but that the deed recited from Wyatt Hanks, Sr., to Richard S. Hanks and Wyatt Hanks, Jr., was duly executed, as therein recited, all of which is fully shown from the deed which was read in evidence on the trial of this cause.  In conveyance from Wyatt Hanks, Sr., to Wyatt Hanks, Jr., and Richard S. Hanks there is a recital to the effect that the 1700 acres had been sold by Isaiah S. Fields to Wm. D. Smith, and conveyed by Wm. D. Smith to Wyatt Hanks, Sr.  I find that the deed recited in this conveyance from Isaiah S. Fields to Wm. D. Smith was executed, as therein recited.  I further find that in view of the fact of the destruction of the deed records of Liberty County, Texas, by fire in 1874, the recital made in the judgment rendered in the case of Sarah Fields et al. v. S. B. Cooper et al. to the effect that the land decreed to S. B. Cooper was 320 acres which was conveyed to him by J. K. Hanks, on the 16th day of August, 1881, and the recital made in the deed from J. K. Hanks to S. B. Cooper, which is dated the 16th day of August, 1881, to the effect that it was the same land conveyed to Richard S. Hanks and Wyatt Hanks, Jr., by Wyatt Hanks, Sr., attorney in fact for Wm. D. Smith, by deed bearing date the 17th day of September, 1857, and the recital made in the deed from Wyatt Hanks, Sr., to Wyatt Hanks, Jr., and Richard S. Hanks, which is dated the 17th day of September, 1857, to the effect that the 1700 acres had been conveyed by Isaiah S. Fields to Wm. D. Smith and by Wm. D. Smith to Wyatt Hanks, Sr., were sufficient to put all persons deraigning title through Cooper, and through any party to this judgment, upon notice of the existence of the deed from Fields to Smith; at least, these recitals were sufficient to put them upon inquiry as to whether or not such a deed had ever existed, and, if this inquiry had been properly pursued, it would have led to the discovery of the fact that the plaintiffs were legal owners of the land in controversy; and inasmuch as the defendants deraign their title through

S. B. Cooper and through this judgment, they can not claim to be innocent purchasers for value without notice.

"12. There is a regular chain of transfers from S. B. Cooper down to and into the defendants.

"13. There is a regular chain of transfers from G. T. Hanks, one of the defendants in the case of Sarah Fields et al. v. S. B. Cooper et al. down to and into the defendants, but there being no title in either Cooper or Hanks, I find that no title passed to the defendants.

"14. I find that, at the time the defendants in this case and those through whom they deraign title acquired title to the land in controversy, they then had notice of the deed from Isaiah S. Fields to Wm. D. Smith and had notice of the plaintiffs' claim to the land in controversy, and had notice of facts sufficient to put them upon inquiry with reference to the plaintiffs' right to said land, and that by reason of these facts they can not be purchasers for value without notice, and are not entitled to be protected as such."

Plaintiffs in proving their title undertook to establish the execution of a deed, alleged to have been executed in 1840, from Isaiah Fields, the original grantee, to W. D. Smith, under whom they show title. In laying the predicate for the introduction of secondary evidence to establish the execution and contents of this deed, plaintiffs offered in evidence carbon copies of certain typewritten letters written by their attorneys to surviving members of the family and relatives of W. D. Smith making inquiry as to said deed. It was shown by the attorney who wrote the letters that it was his custom in preserving copies of business letters to prepare carbon copies of the originals which were filed away. The carbon copies in question were not signed but it was shown that the copies offered were such carbon copies of letters signed and mailed to the addressees. No effort was made to procure from such addressees—all of whom lived in this State, but in distant counties—the originals of the letters sent, and no evidence was offered tending to show that such originals could not have been procured. Objection was made to the introduction of each of the copies on this ground, which was overruled, and defendants excepted and make the ruling the basis of their first four assignments of error.

We are of the opinion that the assignments should be sustained. The copies of the letters signed and forwarded, and those kept by the addressers can not be considered duplicate originals. There can be no logical difference between such copies and the letter press copies, which have always been held to be copies which are not admissible in evidence without accounting for the non-production of the originals. (2 Wigmore Ev., sec. 1234; Hubbard v. Russell, 24 Barb., 404; 3 Enc. of Ev., p. 540.) If a writer, desiring to preserve a copy of a letter writes at the same time two copies exactly alike, one of which he proposes to send and the other to keep, it is a matter of indifference which copy he sends, but the one sent becomes the original and the other a copy, no matter by what force of evidence it is shown to be an absolutely accurate copy. The court was in error in overruling the objection and admitting the copies, but in the view we take of the case such error does not require a reversal of the judgment, for the reasons hereafter shown.

The letters above referred to were addressed to Sidney A. Smith,

Gonzales, Texas, grandson of W. D. Smith; Dr. Elisha H. Smith, Victoria, Texas, son of said Smith; Mrs. Matilda Jobe, Gatesville, Texas, a daughter, and J. C. Burns, Goliad, Texas, who seems at one time to have had some connection as an attorney with an investigation by plaintiffs of their title. Plaintiffs offered in evidence original letters which Baldwin testified had been received by him from Sidney H. Smith. Objection was made to the introduction in evidence of these letters, on the ground that they were ex parte unsworn statements of the parties, and also that it was not shown that they had been signed by the parties respectively by whom they were written. No evidence was offered as to the signature. The objections were overruled and the evidence admitted, to which defendants excepted, and the point is made the basis of the fifth and sixth assignments of error.

Baldwin, witness for plaintiffs, testified that his firm made an effort to locate the deed from Isaiah Fields to Wm. D. Smith and, as a part of that effort, on December 31, 1906, wrote Sidney S. Smith, who was a grandson of Wm. D. Smith, deceased, with reference to this deed and who they thought at that time might give them some information with reference to it, and that they received in reply the letter offered in evidence. The letter is as follows:

"Gonzales, Texas, January 7, 1907.

"Baldwin & Christian,
        Attys. at Law, Houston, Texas.

Gentlemen:—

"Yours of recent date in regard to papers belonging to my grandfather, W. D. Smith, was received several days ago, and in reply will say that if the deed about which you inquire is in existence, it is probably in the possession of my uncle, Dr. Elisha H. Smith, of Victoria, Texas. He is the only one of the administrators now living, and I think has nearly all papers. Sorry I am unable to give you more information.

Very truly yours,
                        Sidney A. Smith."

The witness further testified that they then wrote to Elisha H. Smith and received from him a reply which is as follows:

"Victoria Co., Tex., Jan. 16, 1907.
                        R. F. D. Route No. 7.

"Mr. J. C. Baldwin,
        Houston, Texas.

"Dear Sir:—

"A letter of inquiry concerning title to part of Isaiah Fields survey in Liberty Co., Texas, came to me some days since when I was quite busy and lost or mislaid the answer, so I write this to say W. D. Smith was my father, he owned several tracts of land in Liberty and in other East Tex. Counties, though I do not recollect ever hearing him speak of the Isaiah Fields, and am sure he would have given over to purchaser all papers concerning any land which he ever sold. Father, after moving to Gonzales Co. lived with my oldest brother, J. R. S., until after the war, then with the youngest, F. G. Smith at San Anton,

several years and finally with Mrs. Jobe, my youngest sister, at Gonzales, where he died, his papers were with F. G. Smith, father of Sid A. Smith of Gonzales, some with Mrs. Jobe's husband and some with F. E. Smith at Corsicana, and it was not until after the death of those three, Dr. John R. Smith, Dr. John Jobe and Felix G. Smith, that I came into the possession of papers which W. D. Smith left, and there was nothing to show that he ever owned any part of survey mentioned in your letter.    Please tell me on postal enclosed if you get this, etc.

Yours,

Dr. E. W. Smith.

"P. S.—Mrs. Matilda Jobe, now of Gatesville, Tex., would tell you if she knows of such a paper, she was with W. D. Smith nearly all the latter part of his life. Address to her at Gatesville, care of Mr. Royalty.

Yours, etc.,

E. W. S."

Plaintiffs were laying the predicate for the introduction of secondary evidence to establish the execution and contents of the deed from Fields to W. D. Smith, afterwards shown to have been executed in 1840 or about that time.    In doing so it was required that they show that they had used reasonable diligence in searching for the original deed and were unable to produce it on the trial.    It was material and competent in showing such diligence to prove, in connection with the testimony that letters of inquiry had been written to persons who might be supposed to be able to give some information with regard to the missing deed, that replies had been received purporting to be from the persons addressed containing the information shown in the letters quoted.    Plaintiffs (or their attorney) had a right to assume that the letters so received and purporting to be signed by the persons to whom his own letters had been addressed, came from those persons.    The exercise of reasonable diligence on their part in searching for the deed did not require further exploration of this source of information after receiving the answers to their letters, and this would be true regardless of whether the letters were, in fact, written and signed by the persons referred to, and whether the information given was true or not.    The question is not whether these parties knew anything about the whereabouts of this deed, but whether plaintiffs had used reasonable diligence in exploring this source of information.    He had every reason to believe that the letters received were in reply to the letters sent and he had no reason to suspect that the contents were not true.    He was not required to go further as to this source of information.    The fact that he got the information in letters purporting to be in reply to his own letters asking it, was the material thing in determining whether reasonable diligence had been used to get the missing deed.    (White v. Burney, 27 Texas, 50; Walker v. Pittman, 18 Texas Civ. App., 519; Johnson v. Arnwine, 42 N. J. L. 454; 2 Wigmore Ev., sec. 1194.)    The trial court did not err in overruling the objections and admitting the evidence.    The assignments are overruled.

In proof of the missing deed plaintiffs offered in evidence a certificate of the county clerk of Liberty County dated October 17, 1847, under his official seal, to the effect, in substance, that there was of record in

his office a deed from Isaiah Fields to Wm. D. Smith for 1700 acres of land, a part of the headright of said Fields, also that he has in his office (filed for record) a power of attorney (with power to sell) from said Smith to Wyatt Hanks, of said lands. The deed records of Liberty County were destroyed by fire in 1874, and this deed was never recorded.

Objection was made to the introduction of this certificate upon the ground: "That it is irrelevant and immaterial and, if offered for the purpose of proving the existence of a lost deed, no predicate had been laid for its introduction." The objection was overruled and the document admitted, to which defendants excepted, and the point is made the basis of the seventh assignment of error.

In addition to writing to Sidney Smith, the grandson, and Elisha Smith, the son, of W. D. Smith, plaintiffs' attorney wrote to Mrs. Jobe, a daughter, to which he received no reply, and to J. C. Burns, an attorney who had at one time investigated the title for Wyatt Hanks, who replied that he had never seen this deed. Baldwin afterwards saw Elisha Smith, who was a son of W. D. Smith, and was told by him that he was administrator of his father's estate and that he did not have the deed and did not know where it could be found. He stated that he had made a search for the paper and could not find it. The deed, if executed at all, was executed at some date prior to 1847, supposed to have been in 1840. The grantor had been dead may years. Wyatt Hanks, Sr., had also been dead about 40 years as well as Wyatt Hanks, Jr., and Richard S. Hanks. Plaintiffs had every motive to search for and find and produce the deed. "A material inquiry in such cases is whether or not there was a probable motive for withholding this highest and best evidence." (Jernigan v. The State, 81 Ala., 60.)

The whole matter of the sufficiency of the proof offered as a predicate is left to the sound (though not uncontrolled) discretion of the trial court under all the facts and circumstances of the particular case. (Cheatham v. Riddle, 8 Texas, 167; Mays v. Moore, 13 Texas, 88; 2 Wigmore Ev., sec. 1194.) The evidence introduced to our minds conclusively established the execution and contents of this deed. The trial court did not err in overruling the objection and admitting the evidence. The assignment is overruled.

The eighth and ninth assignments are without merit. The evidence abundantly sustains the finding by the court in the eleventh and fourteenth paragraphs of the conclusions of fact, that the recitals in the judgment in the case of Sarah Fields et al. v. S. B. Cooper et al., under which defendants deraign title, and in the deeds in the chain of title, were sufficient to affect defendants with notice of the deed from Fields to Wm. D. Smith. The judgment in Fields et al. v. Cooper et al. describes the land allotted to Cooper as 320 acres conveyed to him by J. K. Hanks. The deed from J. K. Hanks to Cooper describes it as one-half of the tract of land sold jointly to R. S. Hanks and Wyatt Hanks, Jr., by Wyatt Hanks, Sr., attorney in fact of Wm. D. Smith, duly recorded, etc. This latter deed describes the land as 640 acres out of the north half of the Isaiah Fields headright, being the east end of 1700 acres sold by the aforesaid Fields to Wm. D. Smith. All of these deeds were of record in Liberty County when defendants purchased. One of

defendants testified that he had no notice concerning the title except such as appears from the records of Liberty County. At least one of the deeds in his chain of title, on record, recited the execution of the deed from Fields to Smith, as the basis of the title, and other deeds in his chain of title referred to the former deed. This Fields deed was in fact a necessary part of their own title, as shown by the judgment and by the various deeds under which defendants claim. We think this evidence was sufficient to affect them with notice, not only as to the 320 acres they got from Cooper, but of the entire 640 acres which came through this deed. It is incorrect to say that these recitals in their chain of title were sufficient to put defendants upon inquiry. They gave them positive and unequivocal notice of the existence of the Fields deed. The assignments and the various propositions thereunder are overruled. (Willis v. Gay, 48 Texas, 469; Wimberly v. Pabst, 55 Texas, 592.)

There was no error in admitting in evidence the power of attorney from W. D. Smith to Wyatt Hanks, over the objection urged that it does not describe the land in controversy. The power of attorney dealt with the larger tract of which the tract in controversy is a part. It is described as a certain tract situated in Liberty County, a part of the Isaiah Fields headright, "my interest in said survey being about 2000 acres as will more fully appear by reference to the county records of Liberty County." It sufficiently appears that the land conveyed was Smith's interest of about 2000 acres in the survey as shown by the county records, which showed at that time the deed from Isaiah Fields to Smith identifying the land as 1700 acres off the north side of the league. The deed was not void for uncertainty of description. Extrinsic evidence might have been resorted to to show what land was owned by Smith in the Fields league. (Hermann v. Likens, 90 Texas, 448.) It would not, however, have affected plaintiff's case if this power of attorney had been excluded. The deed of Wyatt Hanks, Sr., to Wyatt Hanks, Jr., and R. S. Hanks, conveying the 640 acres of land, was more than thirty years old. Possession was shown under the deed, and it purported to be made under a power of attorney from W. D. Smith. The execution of the power of attorney would be presumed without other proof.

The deed from Wyatt Hanks, Sr., to Wyatt Hanks, Jr., and R. S. Hanks was also objected to for uncertainty of description. The land is described in this deed as "640 acres situated in Liberty County east of the Trinity River about 25 miles above Liberty, and out of the north ½ of the Isaiah Fields' headright league, it being the E. end of 1700 acres sold by the aforesaid Fields to W. D. Smith, and conveyed to me, Wyatt Hanks, by power of attorney irrevocable by the said Smith, as will appear from the records of Liberty County." This described the land with sufficient certainty to be identified by the aid of extrinsic evidence, which is sufficient. (Camley v. Stanfield, 10 Texas, 550; Hermann v. Likens, supra.) Assignments of error ten and eleven presenting the questions are overruled.

The finding of the court that Fields had executed to W. D. Smith the deed referred to was, we think, conclusively established by the evidence. This evidence consisted of recitals in deeds conveying the land, all more than forty years old, claim of title and actual possession,

cultivation and improvement, payment of taxes, etc., under this deed with the knowledge and acquiescence of Isaiah Fields in his lifetime and of his heirs after him, proof of the actual record of such a deed in Liberty County as early as 1847, and the testimony of one witness that Fields told him that he had "given the land to Smith," which could only have meant that he had conveyed it to him. The assignments of error that the court erred in its findings on this point because they are unsupported by the evidence, as set out in the thirteenth and fourteenth assignments, are without merit. (Brewer v. Cochran, 45 Texas Civ. App., 179, and cases cited.)

In view of the fact that the trial was before the court the admission of the letters referred to in the twelfth assignment can not be held to be reversible error, if error at all.

The court did not err in the third, fifth, seventh, ninth and eleventh conclusions of fact, as set out in the thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error. We will not discuss or repeat here the evidence in support of these conclusions. It is amply sufficient to support the court's findings.

What has been said sufficiently disposes of the remaining assignments of error, which attack the conclusions of law that the plaintiffs were entitled to recover, and the judgment in their favor. The facts found can result in no other legal conclusion than that the plaintiffs are entitled to the land. Finding no reversible error the judgment is affirmed.

*Affirmed.*

Writ of error refused.