## GIVENS v. TURNER. (No. 6411.)

(Court of Civil Appeals of Texas. San Antonio. June 19, 1920. Rehearing Denied July 3, 1920.)

1. **Evidence** ⬦186(6)—**Rule as to copies and letterpress copies applies to carbon copies.**

The rule applied to admission in evidence of ordinary copies and letterpress copies also applies to carbon copies.

2. **Evidence** ⬦186(6) — **Confirmation notices and "outturns" of shipments held not admissible as duplicate originals.**

Carbon copies of "outturn" sheets and confirmation notices were not admissible as duplicate originals where the originals were partly printed and partly typewritten, the carbon copies not including the printed portion.

3. **Evidence** ⬦185(1, 5)—**Notice to produce original writing when excused.**

A notice to produce a writing may be excused where from the nature of the proceeding

the pleadings. and the like, knowledge by the other party of the fact that the instrument will be required will be presumed, in which case a failure to produce it will, without notice, enable its proponent to introduce other evidence of its contents.

**4. Evidence ☞185(5)—Failure to give notice to produce writing held excused in view of nature of case.**

In a suit involving an accounting in which plaintiff pleaded that certain sales of cotton had been made to him, certain cotton delivered, and that the "outturns" were as shown by exhibit attached to his pleading, defendant must have known that plaintiff would charge him with possession of all original notices of confirmation and statements of "outturns" sent him, and that the instruments would be required in order to have the accounting contemplated by the pleadings, and hence plaintiff was properly permitted to introduce evidence of their contents without having given defendant notice to produce the writings.

**5. Appeal and error ☞1050(1)—Admission of evidence on issue not raised harmless.**

If there was any error in the admission in evidence of carbon copies of notices of confirmation and statements of "outturns" in an action involving an accounting, it was harmless where no issue was raised concerning the contents of the notices of confirmation and no dispute existed concerning the terms of the sale, it one was made; the only issue relating to the confirmation notice, and statements of "turnouts" being whether defendant received them at such a time that his failure to repudiate would strongly corroborate plaintiff's version of an absolute and unconditional sale.

Appeal from District Court, Victoria County: John M. Green, Judge.

Action by A. W. Turner against R. G. Givens. Judgment for plaintiff, and defendant appeals. Affirmed.

R. L. Daniel, of Victoria, for appellant.

Fly & Ragsdale, of Victoria, for appellee.

MOURSUND, J. A. W. Turner sued R. G. Givens for $2,291.01, alleged to be due upon the balancing of accounts arising by reason of the sale of cotton by Givens to Turner during the season of 1918, said cotton to be shipped from Bloomington, where Givens was buying cotton, to Victoria, where Turner conducted his cotton brokerage business, and to be there classified and weighed. An account of the alleged purchases made by Turner and deliveries made was attached to the petition, and it was alleged that the account was closed by a "ringout" agreement between the parties, by which Givens received a credit of $349.37, which being deducted from the balance shown to be due Turner by the account showing the drafts and "outturns," left remaining the sum sued for.

Givens answered by a general demurrer, a special exception, a general denial, and a special answer and cross-action, wherein he claimed that Turner owed him $37.09, alleged to be due him as the result of their cotton dealings during said season of 1918. To this pleading were attached various accounts showing the dealings as viewed from Givens' standpoint.

The trial resulted in a verdict and judgment for Turner for the sum sued for by him.

By assignments 1 and 2 complaint is made of the admission in evidence of copies of confirmation notices of the various sales claimed by Turner to have been booked by him, and copies of "outturn" sheets claimed to have been sent by Turner to Givens showing the "outturns" of the various shipments of cotton received by him from Givens.

[1-3] The propositions urged under these assignments raise only one issue, and that is that the copies were inadmissible for the reason that no notice was given Givens to produce the originals, nor was it shown that they could not have been obtained. It is true that no notice or demand was shown. The copies of the notices of confirmation consisted partly of printed matter and partly of typewriting inserted in the blanks in the printing and shown to have been made by the use of carbon paper at the time the original notice was made. The copies of statements of "outturns" introduced consisted of carbon copies of the typewritten portions of the original "outturn" sheets which were made upon printed blanks, but the copy did not include the printed portion. Our courts have held that the rule applied to ordinary copies and letterpress copies also applies to carbon copies. McDonald v. Hanks, 52 Tex. Civ. App. 140, 113 S. W. 604; Walsh v. Methodist Church, 173 S. W. 241. The correctness of such holding has been taken for granted in the following cases: People's Sav. Bk. v. Marrs, 206 S. W. 847; Bay Lumber Co. v. Snelling, 205 S. W. 763; Bennett Brown Co. v. Denison Gazette, 201 S. W. 1044. We do not think that copies such as are involved herein can be held to be duplicate originals, but we believe the assignments should be overruled for other reasons. In addition to the exception authorizing the introduction of duplicate originals without notice, it is well established that a notice to produce a writing may be excused, where, from the nature of the proceeding, the pleadings, and the like, knowledge by the other party of the fact that the instrument will be required will be presumed. In such cases a failure to produce it will, without notice, enable the proponent to introduce other evidence of its contents. Chamberlayne on Ev. § 3585; 2 Elliott, Ev. § 1441.

[4] This is a suit involving an accounting, in which plaintiff pleaded that certain sales of cotton had been made to him, certain cot-

ton delivered, and that the "outturns" were as shown by exhibit attached to his pleading. The defendant in his cross-action pleaded as follows:

"This defendant says that said cotton was bought by him at Bloomington and shipped to Victoria and said sales were governed by compress weights, and that the plaintiff did not furnish this defendant with proper and correct statements of the outturns of said cotton, nor did he furnish him with prompt notification in writing of the confirmation of sales. * * *"

In view of the nature of the case and the pleadings the defendant must have known that plaintiff would charge him with possession of all original notices of confirmation and statements of "outturns" sent him, and that the instruments would be required in order to have the accounting contemplated by the pleadings. The defendant cannot be heard to say that he could not anticipate that the plaintiff would undertake to meet the allegations in the cross-action by offering evidence to show that confirmations were sent, and were sent promptly, and that correct statements of the "outturns" were furnished to defendant.

[5] We are also of the opinion that, if there was any error in the admission of this evidence, it was harmless.

In order to present our views it will be necessary to discuss the entire case.

The real controversy, at least in so far as questions presented in the brief are concerned, is whether or not a sale of 50 bales of cotton was made on July 25, 1918, over the telephone, by defendant to plaintiff for 25½ cents per pound, to be delivered August 10th. It was admitted that a conversation took place, but defendant testified that he only bound himself conditionally. There was no controversy concerning the amount of cotton, the price nor the date of delivery, provided a sale was really consummated. The plaintiff testified that the sale was made, and that it was not conditioned upon defendant's obtaining the cotton; that he (plaintiff) entered it in his little book; that it was transferred to the ledger and a confirmation sent defendant. This testimony was not objected to. Plaintiff's bookkeeper, in answer to questions in behalf of defendant, testified that he sent the confirmation notices on the day after purchases were made or on the following Sunday. Defendant testified that plaintiff "mailed the confirmations, outturns and a part of the weight sheets at the same time"; that he found out about September 1st that plaintiff was claiming a 50-bale sale to him. He then said:

"According to the confirmation sheet sent me that sale was made along about July 26th, I think; I believe the sheet shows it was on July 25th. * * * According to his confirmation that cotton was to be delivered on August 10th. In our conversations over the telephone

with reference to this 50-bale lot of cotton in July, he said I could deliver it on August 10th. * * * It was about September 1st when I first learned that he was claiming I had sold him 50 bales of cotton on July 25th. I learned that fact by talking to him and to his bookkeeper, and I also learned it from his confirmation when he sent it down."

On cross-examination he testified:

"I stated that Mr. Turner called me up one night in July and asked me about the cotton at the gin and asked me to sell him that cotton, and I believe he offered 25 or 25½ cents for it, and I told him it could not be bought. He said, 'Let me book you these 50 bales and you get down there on them in the morning and buy them?' and I told him he could book it on the condition that I could buy it but that I did not believe it could be bought. I received a confirmation of that very sale from Mr. Turner. I got the confirmation, an outturn, and a part of the weight sheets all at the same time; but I do not know what date I received them. I did not get that confirmation from him on the 26th or 27th of July. I did not get an outturn for a part of that shipment on July 27th. When I received the confirmation for the 50 bales of cotton sold on July 25th from Mr. Turner at 25½ cents, I do not remember making any reply to Mr. Turner about it. * * * I told Mr. Turner in our conversation that if I could buy any of that cotton down there I would ship it to him at 25½ cents. That was on about July 25th. I bought some cotton and shipped it to Mr. Turner between July 25th and August 1st. I do not know whether I bought any during that time or not, but I shipped Mr. Turner some that I had at that time."

He admitted shipping 17 bales on July 27th, although he contended he made his first sale on August 1st; also, that he shipped some on July 30th and 31st.

The foregoing is sufficient to demonstrate that the only issue relating to the confirmation notice was whether defendant received it at such a time that his failure to repudiate it would strongly corroborate plaintiff's version of an absolute and unconditional sale, or whether he received it at so late a time that his failure to repudiate it is more or less consistent with his claim that no sale was consummated. No issue was raised concerning the contents of the notice of confirmation, and no dispute exists concerning the terms of the sale if one was made. The issue whether such a sale was made was solved by the jury in favor of plaintiff, and, as the copy of the confirmation notice could not have cast any light upon the issue with respect to the time when the notice was sent or received, we fail to see how the introduction in evidence of such copy could have been prejudicial to defendant. Each of the sales, other than the one alleged to have been made on July 25, 1918, shown by copies of notices of confirmation to have been made, was also shown by Exhibit A, attached to defendant's answer.

The outturn statements, which bear on their faces evidence of a claim that a sale was made on July 25th of 50 bales at 25¼, are the first three, dated respectively July 30th, August 6th, and September 2d. The testimony concerning their transmission and receipt is practically the same as that relating to the confirmation notice. What has been said concerning the materiality of said confirmation notice on the issue whether a sale was made on July 25th also applies to these copies of outturn statements. There is no contention in the brief that such statements were material upon any other issue.

We find no merit in the contention that the court erred in failing to give special charge No. 1. The charge given on the point was correct, and, while it may be that the special charge correctly stated abstract propositions of law, it appears to us that it would tend to confuse the jury. The evidence raised the issue of fact whether the proposition on the part of defendant to sell 50 bales upon the terms stated was absolute or conditional, and the charge refused would not have' aided, but might have confused, the jury in deciding that issue.

By the fourth and fifth assignments it is contended that the court submitted the wrong measure of damages, but it will be noticed from an inspection of the pleadings that the plaintiff alleged that the account was closed up by a "ringout" agreement made on October 30, 1918, between Turner and Givens. In view of this pleading, the measure of damages contended for in the propositions was inapplicable.

Judgment affirmed.