## J. O. Johnson et al. v. Marie Schumacher et al.

### No. 6022.

1. **Possession in Good Faith.**—The possessor of land claiming for improvements must not only believe he has the superior title, but there must be reasonable grounds for the belief to amount to good faith in the sense in which the term is used in the statute.

2. **Same—Defective Title.**—One holding under a defective title, ignorant of the superior title, having used proper care to ascertain the condition of the title, may hold in good faith if in fact he believed his title good.

3. **Verdict.**—The defendants proved value of improvements differing largely in amount. The jury found a sum to be allowed, dividing it among defendants equally. *Held*, such verdict is not supported by the testimony and should have been set aside.

4. **Tenant in Common—Trespass to Try Title.**—One tenant in common may sue for and recover the entire tract of land in trespass to try title against a mere trespasser.

5. **Limitation, as to Part.**—Where limitation is made out against the interest of one or more tenants in common, the plaintiff against whom limitation does not run by reason of coverture, can only recover as to that not barred by limitations.

6. **Same.**—A purchase by a married woman will not stop the running of the statute when it had begun to run.

7. **Disclaimer.**—Where one of several defendants in trespass to try title and not in possession disclaims, judgment as to the defendant so disclaiming should be for the plaintiff for the land and for the defendant for costs of suit.

Appeal from San Saba. Tried below before Hon. A. W. Moursund.

Mrs. Marie Schumacher and husband sued in trespass to try title J. O. Johnson, D. W. Parrisher, and W. C. Hartley, for survey No. 111, in district 10, San Saba County, and in another action sued the same parties and also A. McGill, J. W. Williams, Dick Callan, and Katy Williams for section No. 110 in the same district. Mrs. Schumacher claimed the land as her separate property. The suits were consolidated.

Defendants answered by plea of not guilty, limitation of three, five, and ten years, improvements in good faith (except Hartley, who did not ask for compensation for improvements, and Katy Williams, who disclaimed). Defendants claiming by limitation set out the field notes of the land claimed, except Callan, and each of them but Katy Williams itemized the improvements made. Plaintiff in reply to pleas of limitation set up her coverture with her coplaintiff.

On the trial plaintiff deraigned title as follows: The two surveys, 110 and 111, containing 320 acres each, were patented to the heirs of Friedrich Neher, deceased. John G. Neher and Marie Schumacher, nee Neher, were his children and only heirs. Plaintiff offered two deeds from her

brother John Neher, conveying to her his undivided one-half of the two surveys, consideration love and affection, one dated March 3, 1884, and the other February 13, 1884. Defendants had filed affidavits charging that the deeds were forgeries. The question of forgery was upon evidence of Neher denying that he made the deeds, and of experts by comparison of handwriting submitted to the jury. Plaintiff's coverture was proved as alleged. Neher swore that he sold his interest in his father's certificate to W. D. Jackson a short time before the war. The statement of facts does not show the date of the patents on the two surveys.

Defendants proved by W. D. Williams that in 1855 he purchased the improvements on the place where defendant Johnson now lives from a Mr. Howard; that he lived there a short time, and sold the improvements to a Mr. ——; that in three or four weeks Mr. —— sold the improvements, which at that time consisted of a log house, to R. T. Barber; that the land is in what is known as the German Colony; that at that time in 1855 there was talk that these German lands would be forfeited and the settlers would hold the land. He said: "I never sold the land, only sold the improvements." R. T. Barber testified: "I purchased the improvements on the land from Mr. ——, who bought of Mr. Williams. I settled on the land in 1856. I lived upon the place and used and occupied both surveys; they join and form one section of 640 acres. I never had a deed to the land until I purchased it at tax sale in 1879; I purchased both surveys; I never had any title to the land before that; I sold this land to the defendants—to Johnson on the January 20, 1880, to Johnson and Parrisher on November 24, 1883, to A. McGill on November 24, 1883, to Wes. Williams November 21, 1883, to W. C. Hartley November 24, 1883. I thought at the time of the sale that twenty years occupation gave me a better right to the land than my tax deed. From the time of purchase in 1856 I never abandoned the land, but continued to live upon it and improve the same. I put these improvements on the land in good faith at the time I settled upon the land. It was generally believed that the German Emigration Company had forfeited these lands and that the settlers would hold them. I am well acquainted with the improvements upon these lands and have valued them as follows: J. O. Johnson $738, Johnson and Parrisher $375, Anton McGill $325, Wes. Williams $250. This is a low valuation. * * * W. C. Hartley has no improvements on the land."

Defendants read deeds from R. T. Barber as follows, all quit claim deeds: To Johnson for 200 acres, date January 20, 1880, field notes as set out in his answer; to Johnson and Parrisher for 100 acres, field notes as set out in their answer, date November 24, 1883; to A. McGill 100 acres, November 24, 1883, field notes as set out in his answer; to W. C. Hartley for 23 acres, field notes as set out in his answer, date November 24, 1883; to Wes. Williams for 121 acres, field notes as set out in his an-

swer, date November 21, 1883. Defendants each proved their occupancy continuous from their purchase from Barber, and their improvements; the value as stated by witness Barber; that they purchased and improved the lands in good faith; that the improvements were permanent and valuable; that the land was worth from $1 to $1.50 per acre; that adjoining lands equally as good, with good title, sold for $1.50. Barber testified that $1.50 was a good price and $2 was a big price for the land.

The suits were filed May 4 and June 15, 1884. The trial resulted in a verdict for plaintiff for both tracts of land—Nos. 111 and 110. The verdict was: "We the jury find in favor of M. Schumacher, plaintiff in this cause, and we further agree to allow defendants $600 for their improvements, each $150, and we further find the land worth $2 per acre." Judgment accordingly, from which defendants appealed.

*Burleson & Walters* and *Fisher & Townes*, for appellants.—In actions of trespass to try title where the defense of limitation is set up and plaintiff replies setting up coverture as an avoidance of the effect of defendant's possession, in the absence of testimony with regard to plaintiff's marriage and its date, the court can not assume the fact of marriage and that it occurred before the beginning of defendant's possession, and so instruct the jury and inform them that limitation can not avail the defendants. W. U. Tel. Co. v. Edsall, 63 Texas, 668; Wintz v. Morrison, 17 Texas, 387; Hughes v. Lane, 25 Texas, 367; Childress v. Grim, 57 Texas, 59; Ortiz v. De Benavides, 61 Texas, 63; Sayles's Practice, art. 1318 and cases cited.

When the law fixes a rule for measure of damages and there is uncontradicted testimony showing what the amount of such damage is, the jury can not arbitrarily disregard such rule and establishing a standard of their own agree on a less amount than that shown to be legally due. And where a verdict is the result of such arbitrary agreement or misapprehension or passion it is the duty of the court to set it aside. Southerland on Damages, 2; 1 Sedgwick on Measure of Damages, 37; Proffatt on Jury Trials, secs. 470, 471, 472; Gra. & Stat. on New Trials, 447; Algro v. Duncan, 39 N. Y., 313; Shropshire v. Doxey, 25 Texas, 128; Weisiger v. Chisholm, 28 Texas, 792; Willis v. Lewis, 28 Texas, 185; Ry. Co. v. Bracken, 59 Texas, 75; Irwin v. Cook, 24 Texas, 246.

*Sidon Harris* and *S. W. Yoe*, for appellants.—Possession to be of any value to vest a right or bar a remedy must be actual, continuous, visible, notorious, distinct, and hostile, commencing and continuing under a claim of right inconsistent with and hostile to the claim of the true owner, with the intention on the part of the possessor to claim and make the land his own. Rev. Stats., 3198; Parker v. Baines, 65 Texas, 609; Bracken v. Jones, 63 Texas, 186; Satterwhite v. Rosser, 61 Texas, 171;

Chance v. Branch, 58 Texas, 493; Word v. Drouthett, 44 Texas, 369, 370; Chandler v. Rushing, 38 Texas, 595; Sloan v. Martin, 33 Texas, 418; Wheeler v. Moody, 9 Texas, 377; Tyler on Eject., 912; 2 S. L. C., 598 (561); Ang. on Lim., secs. 384, 385, 390, and 399.

A "squatter" or person occupying land without title is not entitled to compensation for improvements made by him, nor is such party entitled to any such relief for improvements made while occupying land for the purpose and with the intent to acquire title under the statute of limitation of ten years. Equity grants this relief only when the claimant has occupied the land and made permanent valuable improvement thereon in good faith. Rev. Stats., 4813, 4814; Thompson v. Comstock, 59 Texas, 319; Ragsdale v. Gohlke, 36 Texas, 286; Powell v. Davis, 19 Texas, 380; Sed. & Wait on Tr. Ld. Titles, secs. 706, 714, 697.

A verdict must be clearly and conclusively wrong to authorize the reversal of a judgment on that ground. Briscoe v. Bronaugh, 1 Texas, 340; Wells v. Barnett, 7 Texas, 584; Powell v. Haley, 28 Texas, 56; T. & P. R. R. Co. v. O'Donnell, 58 Texas, 44; Latham v. Selkirk, 11 Texas, 314.

COLLARD, JUDGE.—The first, second, and fifth assignments of error are too general to require consideration. The third assignment of error is as follows: "The jury in finding value of improvements made by defendants * * * disregarded the facts proven in this, in giving to each defendant the same amount, $150, when the evidence showed the value of Johnson's improvements to be $738, of Johnson and Parrisher $375, of McGill $325, and of Williams $250."

Defendants claimed under a tax deed and ten years possession under one Barber, who bought the land at tax sale in 1879, and who had had continued possession of both surveys from 1856 to 1883, when he sold to defendants their respective surveys.

Witness Barber testified that the improvements of the defendants were worth respectively the several amounts as set forth in the assignment of errors, and the judge who made up and filed the statement of facts (the parties disagreeing) simply says upon the subject of improvements: "Defendants each proved their occupancy continuous from their purchase from Barber, and their improvements the value as stated by the witness Barber; that they purchased and improved the land in good faith; that the improvements were permanent and valuable; and that the land was worth from one to one and one-half dollars per acre."

The charge of the court submitted the question and the value of improvements made in good faith by each of the defendants. The verdict after finding in favor of Mrs. Schumacher proceeded to find as follows: "And we further agree to allow defendants $600 for their improvements, each $150."

It is a question of fact for the jury to determine whether improvements are made in good faith. The court should instruct the jury as to the meaning of good faith. The possessor must not only believe he has the superior title, but there must be reasonable grounds for the belief to amount to good faith in the sense in which the term is used in the statute. The defendant may claim under a defective title, and there may be a superior title in another, but if he have reasonable grounds to believe his is the best title, is ignorant of the superior title, and has used proper care to ascertain the existence of the same, the jury may properly find he is a possessor in good faith and allow compensation for improvements made in such belief. Dorn v. Dunham, 24 Texas, 366; French v. Grenet, 57 Texas, 273; House v. Stone, 64 Texas, 678.

The verdict of the jury did not expressly find that defendants' improvements were made in good faith, but the finding included the fact, as under the charge they could not allow compensation for improvements without first finding they were made in good faith.

Four of the defendants only proved improvements and their value, viz., Johnson, McGill, Johnson and Parrisher, and Williams. It is evident the jury intended the finding to include these defendants only, as it was for a total of $600, distributed into four parts, $150 to each. The judgment of the court so construed the verdict.

The jury evidently disregarded the evidence in so distributing the amount into four equal portions. The evidence showed no such equality of rights. We can not apply the evidence to the verdict, it is simply impossible.

Appellants by the fourth assignment of error claim that if John Neher conveyed his undivided half of the land to Jackson before he conveyed to his sister by deed of gift, then the plaintiff could at most only recover her undivided half or 320 acres. This is not a correct principle. One tenant in common can maintain the action of trespass to try title and recover against a trespasser or a mere wrong doer. This right is not affected by the Revised Statutes. Ney v. Mumme, 66 Texas, 268.

If, however, the plaintiff show disabilities that will prevent the running of the statute of limitations against her, and the facts and character of possession are such as to create a bar by limitation against one having no disabilities, then she as tenant in common can not recover the interest of her cotenant not suing. In such case the defendants in whose favor the bar is made to appear should recover to the extent of the rights so barred in their favor. Again, if the statute commenced running against John Neher in favor of defendants or him or them under whom they claim and the possession was continued, limitation would not be interrupted by the subsequent acquisition of Neher's title by plaintiff, notwithstanding she was a *feme covert*. When the statute begins to run it is not stopped

by subsequent disabilities or by the disabilities of a person into whose hands the title may fall.

Mrs. Schumacher being a married woman during the whole of the time in which defendants and those under whom they claim had possession, she would be protected to the extent of her one-half undivided interest, but not to the other half, which may have become barred if the facts and character of the possession amount to a bar. Allen v. Read, 66 Texas, 13; Stovall v. Carmichael, 52 Texas, 383.

Upon the filing of the disclaimer by Katy Williams the court should have given judgment in favor of plaintiff against her for the land, and unless she was shown to have been in possession at the time the suit was brought she should have had judgment for her costs. Wootters v. Hall, 67 Texas, 513.

It does not appear that Katy Williams was in possession of the land sued for, and judgment should be here rendered in favor of plaintiff for the land and in favor of Katy Williams for her costs and cost of appeal. As to other defendants the judgment of the court below should be reversed and remanded for a new trial.

*Reversed and remanded.*

Adopted December 18, 1888.