James Jacks et al. v. Levi Dillon.

No. 193.

1. Deed — Husband and Wife. — When the husband and wife join in a deed, and the certificate of acknowledgment of the wife is defective, if the evidence shows that the wife had no separate interest in the land, and the deed has been duly acknowledged by the husband and registered, the title passes to the grantor and will support limitations.

2. Cotenant — Limitations — Ouster. — When a cotenant asserts ownership in himself of the entire estate, and conveys the entire tract, and the grantee takes possession thereof under the deed, this is an ouster, and the statute of limitations will run against the cotenant.

3. Same.—The fact that such deeds conveying the entire tract referred for description to the previous deeds in the chain of title, which did not undertake to convey all the land, does not diminish their effect as an act hostile to a common title that may have existed.

4. Limitation — Break in Registration of Deed. —Deed from Smith to Dillon was executed November 8, 1886; was not recorded until December 16, 1886. The deed was executed in California, and described the grantee as residing in Illinois. *Held*, when it is sought to connect the possession of one person with that of another, an instantaneous registration of the intermediate deed is not practicable, nor is it required. A reasonable time is required for such purpose. De la Vega v. Butler, 47 Texas, 529.

5. Payment of Taxes.—It is not necessary to prove payment of taxes by tax receipts.

6. Limitation — Constructive Possession.—Where a party by tenant takes possession of a portion of a tract of land under a recorded deed conveying the entire tract, such possession constructively extends to the entire tract.

Appeal from Zavala.    Tried below before Hon. R. W. Hudson.

*W. H. Jack, T. G. Baker*, and *A. A. Dial*, for appellants.

*Clark & Fuller*, for appellee.

JAMES, CHIEF JUSTICE. —*Conclusions of Fact.*—The patent was for two-thirds of one league and labor of land to P. C. Jack, of which J. De Cordova obtained the north one-third for locating the certificate. The plaintiffs were certain of the heirs of the patentee, and their inherited interest was an undivided five-twelfths of the lower two-thirds of the survey.

The defendant, Dillon, exhibited a chain of title in respect to said land emanating from S. B. Jack, a son, and Harriet Jack, the mother of patentee, who were conceded to have owned an undivided seven-twelfths of the land.

This chain of title is as follows:

1. Deed from Harriet Jack to A. C. Jack, conveying her right, title, and interest in the land.

2. Deed from A. C. Jack to S. B. Jack, on September —, 1871, conveying all his right, title, and interest acquired by him from his mother, Harriet Jack, and his own interest as an heir of P. C. Jack.

3. Deed from S. B. Jack to A. N. Demaret, on January 18, 1880, conveying " all the right, title, and interest of S. B. Jack acquired by him of his father, A. C. Jack, and of A. C. Jack acquired from his mother, Harriet Jack, and A. C. Jack's interest as a brother and heir of P. C. Jack.''

4. Power of attorney from Demaret to J. L. Truehart to sell the land in controversy, and referring for more particular description of the land to the deeds that are above mentioned.

5. Deed by Truehart, as attorney in fact, to Leander Shores, conveying all the lower two-thirds of the survey, referring for more particular description to the deeds from Harriet Jack to A. C. Jack and from A. C. Jack to S. B. Jack and from S. B. Jack to Demaret. This deed is dated on January 31, 1882, and is the first one to specify the number of acres (2086 acres).

6. Deed from Shores to W. H. E. Smith, dated March 1, 1882, and recorded on June 12, 1882, conveying land, described the same as in next preceding deed, and for more particular description refers to the several transfers from Harriet Jack to Demaret, and specifies the number of acres as 2086, being the lower two-thirds of the P. C. Jack survey.

7. Deed from Smith and wife to Levi Dillon, dated November 8, 1886, recorded December 16, 1886, conveying 2086 acres of the P. C. Jack survey, and referring for more particular description to the several deeds from Harriet Jack down to Smith.

W. H. E. Smith leased the land to the guardian of J. R. Black on June 12, 1882, for two years, in consideration of the payment of taxes. On June 12, 1884, this lease was renewed for a period of three years for the same consideration; and on March 15, 1887, it was leased from Levi Dillon, who had then bought from Smith, by J. R. Black and George Holmes for a period of five years, at a semi-annual rental of $52.15, with right on the part of lessor to enter and take possession in a certain time after default in the payment of rent. Neither of these leases were placed on record. In May, 1888, this latter lease was terminated for nonpayment of rent, and the land leased to William Cassin, and Cassin allowed Black and Holmes to keep their stock in the pasture until he (Cassin) took possession, by fencing the entire tract, which was in the summer of 1888, and Cassin has since been in possession of all of the land. The character of possession held by Black and Black and Holmes appears from the following facts:

In 1878 or 1879 a fence was erected by third persons, enclosing about 2000 acres of land, a part of which (about 400 acres) extended over on the land in controversy. This pasture was made to enclose a water hole, and its purpose was to entrap wild cattle that came there to water. It was there in 1882 when the tract in question was leased to Black, who paid for the fence to those who had erected it, and repaired it, and from that time on it has been used under such lease and renewals, the lessees keeping up the fence and using it for their cattle exclusively; but that part of the tract in question outside the enclosure has been open and used by stock generally, until Cassin fenced it all in the summer of 1888. No other use of any of the land has been made than indicated above.

There was evidence that Black paid the taxes on this land for the years 1884, 1885, 1886, that Dillon's agent paid them for 1887, and that Cassin has paid them since. The suit was filed February 28, 1891.

*Conclusions of Law*.—The one question in this case is whether or not defendant has become entitled to the five-twelfths interest pertaining to plaintiff in the land. The five years statute is the only one that could possibly have this result. It is urged by appellants that the deed from Smith and wife to Dillon was not properly acknowledged by the wife, and therefore was not duly registered. The evidence shows, that the wife had no separate title in the land; that the same was vested in the husband, and his acknowledgment to the deed being in due form, there can be no doubt that his title was conveyed by the deed, and that it was duly registered in the meaning of the statute. The taxes appear to have been paid by Smith and by his vendee, Dillon, for the year 1884 and each year thereafter, and including 1891, the suit being filed in 1891.

The issue is then reduced to that of adverse possession. It is not necessary to pass on the question of whether or not the deeds antedating the

deeds to Shores (dated January 31, 1882) were such as did not disturb the relation of cotenancy that existed between the heirs of the original grantee, because by that deed and the deed from Shores to W. H. E. Smith the entire land, and not simply the interest of the grantor, was assumed to be conveyed. Where one cotenant thus usurps and asserts in himself the ownership of the entire estate, and the grantee takes possession of the property under his deed, this is an ouster, and the statute will run against the cotenants. Wood on Lim., sec. 266; Ang. on Lim., secs. 429, 430. The fact that the deeds, which purported to convey the entire land, referred for description to the previous deeds in the chain of title which did not thus undertake to convey all the land, does not diminish their effect as an act hostile to a common title that may have existed.

The district judge filed as one of his conclusions, in substance, that defendant and those under whom he claimed had adverse possession of the land by tenants for more than five years before the suit was filed, under deeds duly recorded, and paying the taxes due thereon.

There is evidence that supports this conclusion.

That Smith in 1882 leased the entire tract to the guardian of J. R. Black; that J. R. Black made exclusive use of a pasture, which included about 400 acres of this land, until 1884, after which he and Holmes, as tenants of Smith, and later of Dillon, held such possession thereof until they delivered possession to another tenant (Cassin) in 1888, who has since had the entire tract enclosed; and that the taxes have been paid since and including 1884, is made clearly to appear from the testimony.

There has been no break in this possession, although it is contended by appellant in his brief that there was no possession shown in Dillon or his tenant between September, 1887, and May, 1888, when the land was leased to Cassin. The testimony shows that the lease of Black and Holmes was not terminated until the lease to Cassin, and that they remained in possession after that, by consent of Cassin, until the latter had completed his fencing.

It is also contended that the deed from Smith and wife to Dillon being executed on November 8, 1886, was not recorded until December 16, 1886, and that therefore Holmes and Black were not holding under one with a registered deed during that time.

In connection with this feature of the five years statute in cases where it is sought to connect the possession of one person with that of another, an instantaneous registration of the intermediate deed is not practicable, nor is it required. A reasonable time is allowed for such purpose. The deed was executed and acknowledged in California, and described the grantee as being of the county of McLean, State of Illinois. We are of opinion that the break in the registration was not material. De la Vega. v. Butler, 47 Texas, 529.

It is not necessary to prove payment of taxes by tax receipts; nor was the fact that the leases were not placed on record of any consequence in this case.

The question that is attended with some difficulty is as to the possession which Smith and Dillon had through their tenants being so distinctly adverse as to meet the requirements of the law of limitation.

The tenants did not make any special use of that part of the land outside of what was within the pasture fence. The pasture was placed there about 1879, before the deed was made to Smith, and it may be contended with some degree of propriety that there was no visible change in the character of possession, the pasture having been there before, and the occupancy of the pasture being the ground upon which appellants are claimed to be barred for the entire tract. It seems, however, that the persons who constructed this pasture, although they did not claim the land, made only a casual use of it. In 1882, a few months after Smith had obtained his deed, and immediately after placing it on record, he leased the entire tract to Black, and Black purchased the fence from those who had erected it, put the fence in good condition, and took and maintained actual and exclusive possession of it, and in this manner remained in exclusive possession of about 400 acres of the land in controversy, paying taxes on the whole.

We do not doubt that if Smith and his successor, Dillon, had personally made this use of a portion of the land for the time and under the conditions shown in the testimony, that limitations would have availed them. That such use occurred through their tenants makes no difference in the case. These acts, coupled with their recorded deeds for the entire tract, was sufficiently notorious to answer the purposes of the statute, and such possession constructively extended over the entire tract. Whitehead v. Foley, 28 Texas, 271; Cantagrel v. Von Lupin, 58 Texas, 577.

We therefore sustain the finding of the judge on this subject, and affirm the judgment.

                                        *Affirmed.*

Delivered January 31, 1894.

Motion for rehearing overruled April 12, 1894

Writ of error refused.