DAWSON et al. v. GROESBEECK.
(No. 536.)

(Court of Civil Appeals of Texas. El Paso. Feb. 24, 1916.)

ADVERSE POSSESSION ⊂=27—EVIDENCE—SUFFICIENCY.

In an action of trespass to try title, evidence *held* to sustain the findings that the predecessor in interest of the plaintiff had occupied the land in question for more than the statutory period for grazing purposes.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 121, 122, 652, 664, 684; Dec. Dig. ⊂=27.]

Appeal from District Court, Jeff Davis County; W. C. Douglas, Judge.

Action by J. N. Groesbeeck against the unknown heirs of J. C. French and another, and S. S. Dawson and others intervene. From a judgment for plaintiff, the interveners appeal. Affirmed.

J. R. Hill, of Ft. Davis, for appellants. J. D. Martin, of Alpine, for appellee.

HARPER, C. J. J. N. Groesbeeck instituted this suit as plaintiff against the unknown heirs of J. C. French, deceased, and the unknown heirs of James Dawson, deceased, in trespass to try title to the lands described in the petition. The unknown heirs were cited by publication. An attorney was appointed to represent them. Afterwards appellants intervened as defendants, pleaded their title specially; that Mrs. P. H. Groesbeeck, as executrix of the last will of J. B. Groesbeeck, deceased, joined in a deed with John C. French in which they conveyed the land herein sued for to one James Dawson, who was alleged to be the father of the interveners. The case was tried by the court without a jury, and judgment was entered in favor of plaintiff against defendants cited by publication, and also against interveners.

The appellants, by two assignments, attack the findings of fact and law upon the ground that the findings as to limitation are not supported by the evidence, but are against the weight and preponderance of it.

"Findings of Fact.

"(1) Surveys 31 and 32 (the two 160-acre tracts of land herein sued for) were patented to John D. Groesbeeck and John C. French under date of January 19, 1859.

"(2) John D. Groesbeeck died October 11, 1856, leaving a will under which his widow (Phœbe H. Groesbeeck) was made independent executrix. His widow was bequeathed his estate in trust for his three children, John N., Henry S., and Charles F. Groesbeeck. Henry S. Groesbeeck died in 1899, intestate, unmarried, and without issue.

"(3) On February 24, 1859, Phœbe H. Groesbeeck, as executrix of the estate of John D. Groesbeeck, deceased, and John C. French, conveyed said surveys 31 and 32 to James Dawson. No possession was ever taken by any one claiming under said deed, and no taxes were ever paid by the grantee or any one claiming under him, and it does not appear that any claim was ever asserted thereunder.

"(4) Under date of January 12, 1884, Mrs. Phœbe H. Groesbeeck, in her own right and as independent executrix of the Estate of John D. Groesbeeck, deceased, conveyed said surveys 31 and 32 to Chas. F. Groesbeeck by deed which was forthwith placed of record.

"(5) Chas. F. Groesbeeck married in May, 1884, and died intestate in July, 1884, leaving no children or their descendants, but survived by his widow, Mollie W. Groesbeeck.

"(6) On March 30, 1893, Mrs. Mollie W. Groesbeeck (widow) made a general power of attorney to Gregg & Young.

"(7) On June 30, 1893, Gregg & Young, as attorneys in fact of Mollie W. Groesbeeck conveyed said surveys 31 and 32 to Mrs. Phœbe H. Groesbeeck by deed which was forthwith placed of record.

"(8) On December 16, 1893, Mrs. Phœbe H. Groesbeeck made a written lease for five years expiring December 16, 1898, of said two tracts to Jesse W. Merrill. Said lease was duly recorded, and said Merrill used said lands continuously under said lease until its expiration, and afterwards under renewals of said lease until 1905, when Merrill transferred his said leasehold to George McGuire. Said lands were so

used by said Merrill for grazing cattle in connection, with certain other lands owned by Merrill, all situated in an inclosure exclusively controlled by Merrill, and known as his ranch. Said ranch was in Limpia Canyon, and consisted of seven to ten sections of land inclosed by a fence upon the east and south, precipitous mountains upon the north and west forming reasonably effective natural barriers, but over which cattle did at times get out of said inclosure as often and as frequently as through the fence.

"(9) George McGuire in 1905 bought out said Jesse Merrill ranch, and continued to hold said surveys 31 and 32 under lease from the Groesbeecks until 1913, making the same character of use of said lands and having the same sort of inclosure as aforesaid.

"(10) Taxes were regularly paid by the Groesbeecks upon said lands as they accrued.

"(11) Mrs. Phœbe H. Groesbeeck died July 24, 1904, leaving a will under which John N. Groesbeeck was sole legatee and devisee of her estate."

Based upon foregoing findings, the court concluded that plaintiffs had title under the five-year statute of limitation.

The testimony of witness Merrill as to the character of plaintiff's possession is uncontradicted. In substance, it is as follows:

"My name is J. W. Merrill. I have lived in Jeff Davis county since 1883. I am acquainted with surveys 31 and 32 lying in Limpia Canyon. I have known these surveys for about 30 years. I used to live—had a little ranch house and kept cattle there between those surveys No. 76 in Limpia Canyon. I located there in 1887 or 1888. No one was living on either of the surveys when I first knew them. I am the J. W. Merrill who signed the contract of lease between J. W. Merrill and Mrs. P. H. Groesbeeck and dated December 21, 1893. After the execution of the lease I grazed cattle on the two quarter sections. I was already in possession of them. I didn't know who owned them for a long time. My house was located right between the two. It wasn't more than 200 yards from the northwest corner of that survey. After I leased these quarter sections, I just let my cattle graze on them; the lower survey I had a watering place. There were two little springs in the south side of the canyon, but they gave so little water that I developed water in the creek bed. There was a deep wash, perhaps 7 or 8 feet deep and 20 or 30 feet wide, and the water passing down had washed that out, and there was water right at the surface in the bottom of that little gulch, and I walled that two sides, a place about perhaps 20 feet square. I walled the three sides and let the cattle in, dug down in against the wall, and set a trough inside, and kept that up as long as I owned the ranch. I must have kept that up there for 15 years. It was a watering place for my cattle that I owned. I kept that watering place and grazed cattle on that land as long as I had the lease and as long as I owned the lands in the canyon there until the time I sold to McGuire; I think it was in 1905. At one time there was a corral on the other section built of cedar poles for the purpose of branding cows. Yes; those two sections were enclosed by an enclosure. There was no fence on the line or near the line of those surveys, but there was a fence on the east and south, a wire fence and mountain, high barriers on the north and west. The string of fence on the south never has been removed; I mean it has never been taken away. The position of it has been changed a little, but it is there yet, not exactly where it was, but almost. That string of fence was 2 or 3 miles long; it was a three-wire fence and cedar posts. On the east there was about the same kind of fence, perhaps four wires most of the way. The end of the fences joined to mountain bluffs, abrupt mountain, steep mountains, and the object of joining onto these mountain bluffs was to avoid further fencing. It wasn't considered necessary. In answer to your question as to whether that barrier was sufficient to turn cattle, I will say that there were places on that mountain where cattle could go over, but they didn't pass over the mountains certainly any more than they did through the wire fence. I considered it a sufficient barrier to keep cattle in and out, although cattle would pass over. I considered it a sufficient fence, although it was possible for cattle to pass over, and cattle did at times pass over just as they would pass over or through a wire fence. The east fence was between a mile and two miles east of the lower section, and the south fence was something like the same distance south of the two. Yes, sir; that fence was there during the entire time I had possession. Those surveys 31 and 32 were inclosed the same way all the time that I had possession; that is, by this wire fence on the south and east and the mountains on the north and west."

We are of opinion that this evidence is sufficient to support the findings of fact and conclusions of law filed by the trial court. The assignments must therefore be overruled, and cause affirmed; and it is so ordered. Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 130; Dunn v. Taylor, 107 S. W. 953; Id., 102 Tex. 80, 113 S. W. 265; Alley v. Bailey, 47 S. W. 821; Parker v. Newberry, 83 Tex. 432, 18 S. W. 815.

Affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.