HULING et al. v. MOORE et al.   (No. 5795.)

(Court of Civil Appeals of Texas.   San Antonio.
March 14, 1917.   Rehearing Denied
April 11, 1917.)

1. ADVERSE POSSESSION ⬨85(2) — ADMISSIBILITY OF EVIDENCE—DEEDS.
    Where defendants claimed title by adverse possession, but plaintiffs claimed they were only cotenants, deeds constituting defendants' chain of title are admissible to show their adverse holding.
    [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 501–503.]

2. EVIDENCE ⬨366(1) — ADMISSIBILITY OF DEEDS—ACKNOWLEDGMENT.
    A land certificate is not rendered inadmissible because it fails to show the seal of the officer taking the acknowledgment, or his recital that he affixed the seal.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521, 1524, 1525.]

3. EVIDENCE ⬨383(7) — COPIES OF ANCIENT INSTRUMENTS—ADMISSIBILITY.
    Certified copies of ancient instruments are entitled to the same weight as the ancient instruments themselves.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1668.]

4. EVIDENCE ⬨70—POWER OF ATTORNEY—PRESUMPTION.
    The execution of a power of attorney under which an ancient instrument purports to have been made will be presumed.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 91.]

5. PUBLIC LANDS ⬨178(3) — UNLOCATED LAND CERTIFICATES—SALE AND DELIVERY.
    Unlocated land certificates are personal property, subject to verbal sale and delivery.
    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 581.]

6. PROPERTY ⬨9—UNLOCATED LAND CERTIFICATES—POSSESSION.
    Possession of unlocated land certificates is prima facie evidence of ownership.
    [Ed. Note.—For other cases, see Property. Cent. Dig. § 9;  Evidence, § 78.]

7. EVIDENCE ⬨70—UNLOCATED LAND CERTIFICATES—PRESUMPTIONS.
    Where an unlocated land certificate was transferred many years ago pursuant to a power of attorney recited in the conveyance, the transfer will be presumed to have been executed under sufficient authority.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 91.]

8. DEEDS ⬨116—WARRANTY DEED—AFTER-ACQUIRED TITLE.
    A general warranty deed conveys an after-acquired title.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 330.]

9. EVIDENCE ⬨97 — BURDEN OF PROOF — EQUITABLE TITLE TO REAL PROPERTY.
    One holding the equitable title to real estate has the burden of showing that his title is superior to the legal title.

10. HUSBAND AND WIFE ⬨6(1)—REAL ESTATE—NATURE OF WIFE'S RIGHTS.
    Where the legal title to real estate is vested in the husband, the wife and her heirs have only an equitable title.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 13–15.]

11. COVENANTS ⬨48—SPECIAL WARRANTY—NOTICE OF DEFECTS.
    A special warranty deed does not charge the grantee with notice of an outstanding equitable title.
    [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 48.]

12. VENDOR AND PURCHASER ⬨238—BONA FIDE PURCHASERS.
    Where title to real estate vests in a purchaser for value without notice of an outstanding equitable title, persons claiming under him acquire a valid title, although they had actual notice of the outstanding equity.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 580–582.]

13. LIMITATION OF ACTIONS ⬨187—PLEADING—STATUTORY EXCEPTIONS.
    Rev. St. 1911, arts. 5677, 5678, providing that possession of land shall not be adverse in certain cases unless fenced, etc., constitutes matter in avoidance of the limitation statute,

which need not be negatived by the party pleading limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 696.]

14. ADVERSE POSSESSION ⊜⇒19—STATUTES—CONSTRUCTION.

Rev. St. 1911, arts. 5677, 5678, providing that possession of land in certain cases is not adverse unless inclosed, etc., applies only to the 10-year, and not to the 5-year, statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105.]

15. ADVERSE POSSESSION ⊜⇒57—SUFFICIENCY OF EVIDENCE.

Evidence held to establish adverse possession under the 5-year statute where the property, together with some other tracts, was fenced on three sides, the other side being bounded by a river which usually kept in the cattle, stock was grazed upon it, portions cultivated, and taxes paid.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278, 655, 667, 687.]

16. ADVERSE POSSESSION ⊜⇒31—NOTICE OF ADVERSE CLAIM—WHAT CONSTITUTES.

The registration of defendants' conveyances and payment of taxes, as shown on the tax rolls, together with their use of the land, held to conclusively charge plaintiffs with notice of their adverse holding.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133.]

17. LIMITATION OF ACTIONS ⊜⇒73(5)—WHEN STATUTE RUNS—MINOR.

Under the direct provisions of Rev. St. 1911, art. 5684, subdiv. 3, the statute limiting time to sue for recovery of real property does not run against a married woman until she is 21 years of age.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 403.]

18. LIMITATION OF ACTIONS ⊜⇒80—INTERRUPTION BY MINORITY OR INSANITY.

Where the adverse possession limitation statute commences to run against a person, his death will not interrupt its running, although his heirs are minors or of unsound mind.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 424–430.]

19. ADVERSE POSSESSION ⊜⇒57—SUFFICIENCY OF EVIDENCE.

Evidence does not establish title by adverse possession under the 10-year statute, where over 5,000 acres were inclosed, but one-tenth of each survey was not cultivated as required by Rev. St. 1911, art. 5678.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 277, 278, 655, 667, 687.]

20. APPEAL AND ERROR ⊜⇒643(1)—AMENDMENT OF RECORD—PERMISSION OF APPELLATE COURT.

Motion to amend the record presented the day preceding submission of the case with no excuse offered for the delay will be overruled under rule 22 for Courts of Civil Appeals (142 S. W. xii), providing that parties should see before submission that the record is properly prepared, etc.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2791–2794.]

Appeal from District Court, Maverick County; Joseph Jones, Judge.

Action by Thomas B. Huling and others against G. Bedell Moore and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

John Dowell, of Houston, and O. R. Sholars, of Orange, for appellants. Lewright & Douglas, of San Antonio, and Ben V. King, of Eagle Pass, for appellees.

MOURSUND, J. Appellants Thos. B. Huling, by his guardian, and Maud Edgerton, joined by her husband, sued G. Bedell Moore and Elizabeth Blasdell Moore to recover an interest of 16/32 in three surveys of land in Maverick county, known as survey No. 67, in name of Peter Rockerfellow, survey No. 68 in the name of James Eaves, and survey No. 69 in name of Robert Wheally, each calling for 738 acres of land. The petition first stated a cause of action in the form of trespass to try title and for rents, and then plaintiffs specially pleaded that they were the owners of said interest in the lands by virtue of the fact that said lands were the community property of Thos. B. Huling and Sarah Huling, his first wife; that Sarah Huling died in February, 1839; that Thos. B. Huling died about November 2, 1865; that their only son, Thos. Huling, died about 1899; that plaintiffs are the only children and heirs of Thos. Huling; that said Thos. B. Huling married again, and by his second wife had seven children; that Thos. Huling inherited his mother's half interest in the lands sued for herein, and said Thos. Huling and said seven children by the second wife jointly inherited the other one half of the land; that, therefore, Thos. Huling owned an undivided interest of 18/32 in said land, which was inherited by plaintiffs. Appellees answered by plea of not guilty, a general denial, pleas of limitation of 3, 5 and 10 years, and impleaded their warrantors, and they adopted the answers of defendants.

Appellants replied to the answer with a general demurrer, special exceptions, and a general denial, and pleaded in avoidance of the pleas of limitation the coverture of plaintiff Maud Edgerton, and insanity of plaintiff Thos. B. Huling; also that plaintiffs and defendants were joint owners and tenants in common of the land sued for, and that defendants had never notified plaintiffs of holding adversely to them; also that the lands were situated in an inclosure containing more than 5,000 acres of land; that there was no fence around the lands sued for segregating it as required by law, and that the possession of defendants and those under whom they claimed had never been exclusive as they were joint users with others having lands in the inclosure in which such lands were situated. They also pleaded that defendants were not purchasers of said lands in good faith for value, but had actual and constructive notice of plaintiffs' claim, and were joint owners and tenants in common, and could not be purchasers for value. Defendants, by supplemental answer, denied all of the allegations contained in plaintiffs' supplemental petition. The court instructed the

jury to return a verdict in favor of appellees, which, having been done, judgment was entered thereon that appellants take nothing by their suit.

On June 5, 1838, certificate No. 303 was issued to Thos. B. Huling, assignee of James Wheally, for one-third of a league of land, and certificate No. 302 for a like amount of land was issued to him as assignee of Peter Rockerfellow. On June 6, 1838, certificate No. 312 was issued to him as assignee of James Eaves for one-third of a league of land. Huling was a married man at the time he acquired such certificates. His wife, Sarah Huling, died in February, 1839, leaving surviving her her husband and her only child, Thomas Huling. Thomas B. Huling died November 2, 1865. His son, Thomas Huling, died approximately 14 years prior to the institution of this suit, leaving surviving him as his only heirs his two children, Maud Edgerton, wife of Parley Edgerton, and Thomas Huling, the plaintiffs in this cause; the mother of the plaintiffs having died prior to the death of said Thomas Huling. This suit was filed September 28, 1914. Maud Edgerton was born July 29, 1882, and married when she was about 20 years of age. Plaintiff Thomas Huling was born July 26, 1885.

On October 30, 1838, James Huling as attorney in fact for Thos. B. Huling transferred certificate No. 302 to Rafael de la Garza by conveyance reciting the delivery thereof to Garza. On November 12, 1838, James Huling transferred certificates Nos. 303 and 312 to Samuel A. Maverick, and in the transfer recited the delivery of such certificates to said Maverick. This transfer contained a copy of the power of attorney by virtue of which James Huling purported to act for Thomas B. Huling, said power of attorney being dated August 12, 1838, and executed by Thomas B. Huling and Thomas H. Espy.

On December 30, 1838, Rafael Garza transferred certificate No. 302 to Peter Fohr, and on September 8, 1842, Peter Fohr transferred the same to Samuel A. Maverick. The certificates were located upon the lands in controversy. On February 7, 1852, survey 68 was patented to Thos. B. Huling, assignee of James Eaves. On February 9, 1852, survey 69 was patented to said Huling as assignee of Robert Wheally. On October 4, 1870, the will of Samuel A. Maverick was probated; he bequeathed half of his estate to his wife, Mary A., and the other half to his children, Sam, George M., Willie H., Mary B., and Albert. Mary A. Maverick was appointed independent executrix without bond and with power of sale. On July 15, 1873, survey No. 67 was patented to Thos. B. Huling, assignee of Peter Rockerfellow. On January 3, 1876, Mary A. Maverick, in her own right, and as independent executrix of the will of Samuel A. Maverick, conveyed the three tracts of land to Albert Maverick. On January 11, 1879, Albert Maverick executed a power of attorney to W. H. Maverick, authorizing the

sale and conveyance of his Texas lands. On May 22, 1882, Albert Maverick, by W. H. Maverick, attorney in fact, conveyed the three surveys to John T. Lytle, Thos. M. McDaniel, and P. W. Thompson, composing the firm of John T. Lytle & Co.

On May 16, 1888, the will of Thomas M. McDaniel was probated, by which his entire estate was left to Josephine McDaniel, his wife. John T. Lytle was appointed independent executor without bond. On June 1, 1889, said Lytle, in his own right and as such executor, and Josephine McDaniel conveyed the three surveys to P. W. Thompson. On June 4, 1897, P. W. Thompson for himself and as survivor of the community estate of himself and Janet E. Thompson, deceased, conveyed the three tracts to T. C. Frost, J. P. Barclay, and J. T. Woodhull. On December 22, 1902, Barclay conveyed said surveys to T. C. Frost. On March 23, 1903, said Frost and Woodhull conveyed the same to P. W. Thompson and to F. V. Blesse as guardian of Walter, Mary, and Kenneth Thompson, minors. On March 21, 1903, said Thompson for himself and as survivor of the community estate of himself and Janet E. Thompson, and F. V. Blesse as guardian of the estate of Walter, Mary, and Kenneth Thompson, conveyed said three surveys to G. Bedell Moore. On November 4, 1908, the will of G. Bedell Moore was admitted to probate, in which his estate was left to his wife, Elizabeth B. Moore, and to any child or children which might survive him of such marriage. In 1909, by decree of the district court, Fifty-Seventh district of Bexar county, confirming partition of the G. Bedell Moore estate, the surveys were awarded to G. Bedell Moore, minor.

The defendants also claim under the following chain of title: On June 1, 1854, Thos. B. Huling conveyed the Eaves and Wheally surveys to M. H. Bowers, and on June 1, 1854, conveyed to said Bowers one-half of one-third of a league out of the headright of Peter Rockerfellow, described as situated in Kinney county and patented to Huling; but date of patent left blank. As the Rockerfellow survey in controversy was not patented until 1873, we cannot identify the same as being the one conveyed to Bowers. On June 8, 1872, the will of W. H. Bowers was probated, by which his estate passed to his wife, Mary M., who, joined by her second husband, in 1892 conveyed the three surveys in controversy to Albert Maverick by special warranty deeds.

It also appears that on March 29, 1890, the children of Thos. B. Huling, by his second wife, conveyed to their mother, Elizabeth Huling, the lands in controversy, and on April 24, 1890, said Elizabeth Huling conveyed the same to C. F. Hodges; also that on May 8, 1893, in cause No. 260, in the district court of Maverick county, entitled C. F. Hodges v. P. W. Thompson, judgment by agreement was entered in favor of Thompson for said lands.

[1] The instruments above mentioned constituted the chains of title under which defendants claimed, and were all admissible in evidence, especially as limitation had been pleaded and it was contended that plaintiffs were cotenants, and that the facts were not sufficient to apprise them that the holding by defendants and their predecessors in interest was adverse to plaintiffs and plaintiffs' father. The objections urged in assignments of error Nos. 2 to 8, inclusive, go to the legal effect of the instruments, and not to their admissibility. Sydnor v. Tex. Savings Ass'n, 42 Tex. Civ. App. 145, 94 S. W. 451. By the ninth assignment complaint is made of the admission of deed from P. M. Thompson and F. V. Blesse, guardian, on the ground that it is a quitclaim deed, and could not support the defense of limitation or that of innocent purchaser for value. The only deed by P. W. Thompson and F. V. Blesse, guardian, is the one to G. Bedell Moore, dated March 21, 1903, and we find that appellants have erred in designating it as a quitclaim deed, for it is a general warranty deed.

In determining the question whether the court ruled correctly in instructing a verdict for defendants, we will consider the legal effect of the conveyances in so far as is necessary to pass upon the theories advanced in support of the rulings of the court.

[2-4] If the transfers by James Huling, purporting to be made as attorney in fact for Thos. B. Huling to Samuel Maverick and Rafael de la Garza are sufficient to pass title to the certificates therein described, it follows that the title held by the community estate of Thos. B. Huling and his first wife, Sarah Huling, was thereby divested, and plaintiffs are not entitled to recover. Said transfers were acknowledged by the maker thereof and duly recorded in 1838, and certified copies thereof introduced in evidence. The evidence was ample to show that the instruments had been acted upon by the grantees therein named and their successors. The objection that the record of the transfer to Maverick fails to show the seal of the officer who took the acknowledgment and recited that he affixed the seal is without merit. Ballard v. Perry, 28 Tex. 348; Witt v. Harlan, 66 Tex. 660, 2 S. W. 41. The copies were entitled to the same weight as ancient instruments as would have been given to the originals had they been produced. Holmes v. Coryell, 58 Tex. 680; Wacaser v. Bank, 172 S. W. 737. The execution of a power of attorney under which an ancient instrument purports to have been made will be presumed. Garner v. Lasker, 71 Tex. 435, 9 S. W. 332; Jones v. Neal, 44 Tex. Civ. App. 418, 98 S. W. 417; McDonald v. Hanks, 52 Tex. Civ. App. 140, 113 S. W. 604; Robertson v. Brothers, 139 S. W. 657; Ferguson v. Ricketts, 55 S. W. 975. The transfer to Maverick contains a copy of the power of attorney under which Jas. Huling purported to make such transfer, reading as follows:

"Know all men by these presents, that, we, James B. Huling and Thomas H. Espy, do by these presents constitute and appoint James Huling our true and lawful attorney to sell, locate, survey and obtain titles to any of our certificates of land where we are assignees; to let out on the shares apart and to obtain titles to the same and to do anything as regards the aforesaid certificates and it shall be binding on us and our heirs as though done by ourselves in our own proper persons."

Said power of attorney was dated August 12, 1838, and the transfer to De la Garza was made on October 30, 1838, and appellants contend that we must find that the transfer to De la Garza was also executed under such power of attorney and that both transfers should be held insufficient to transfer the title of Thos. B. Huling because the power should be construed only to authorize the sale of certificates held by Espy and Huling jointly. The transfer to De la Garza contains neither copy nor description of the power of attorney under which it was made.

[5-7] Unlocated land certificates are held to be personal property subject to verbal sale and delivery. Stone v. Brown, 54 Tex. 330; Crosby v. Ardoin, 145 S. W. 717. The transfers recite delivery of the certificates, and the field notes of all the surveys prove that Maverick held the certificates in 1848 when the surveys were located. It has been held that possession of unlocated land certificates is prima facie evidence that the same are owned by the person having such possession. Alford Bros. v. Williams, 41 Tex. Civ. App. 436, 91 S. W. 636. See, also, Hill v. Templeton, 29 S. W. 537. As Thos. B. Huling could sell his unlocated certificates by verbal sale and delivery, he could deliver them to James Huling and verbally authorize him to sell them, and the possession by James Huling of the certificates was prima facie evidence of his power to dispose of the same. So far as the transfer to De la Garza is concerned, there is nothing on its face to disprove that the power existed, and in view of its age and of the delivery of the certificate, its location, etc., the law indulges the presumption that the transfer was executed by virtue of a legally sufficient authorization. That presumption cannot be destroyed by proof that other certificates were sold to another person by virtue of an insufficient power of attorney. When we consider the transfer to Maverick, however, which purports to be executed by virtue of the power of attorney therein copied, we are confronted with a serious question. See Gilbert v. How, 45 Minn. 121, 47 N. W. 643, 22 Am. St. Rep. 724; Devlin on Real Estate (3d Ed.) § 381. In view of the fact that, even if the transfer to Maverick should be held not to divest the title of Thos. B. Huling and his first wife, the giving of the peremptory instruction must be sustained on other grounds, we find it unnecessary to decide the question thus presented.

[8-12] If the transfer to Maverick did not divest the title of Thos. B. Huling and wife,

then on June 1, 1854, Thos. B. Huling, to whom surveys 68 and 69 had been patented, held the legal title to said surveys. Such legal title then passed to M. H. Bowers by virtue of the deed to him by Thos. B. Huling, and passed to Albert Maverick by the deed from Bowers' wife joined by her second husband. As Maverick had executed a general warranty deed to Lytle & Co., it follows that by virtue of such deed the after-acquired title, namely, the one obtained from Mrs. Bowers, passed to Lytle & Co., and his assigns, and is now held by defendants. If Thos. Huling, plaintiffs' father, had any title to these surveys, it was an equitable one, and the burden rested upon plaintiffs to prove that Bowers had notice of the title of their father at the time the deed was made to him by plaintiffs' grandfather. This burden they wholly failed to discharge. In support of the proposition that Sarah Huling and her heirs had only an equitable title, we cite the following cases: Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121; Baldwin v. Root, 90 Tex. 546, 40 S. W. 3; Ferguson v. Dodd, 183 S. W. 391.

In support of the proposition that the burden of proof rests upon the holder of an equitable title to show that his title is superior to that of the holder of the legal title, which carries with it the burden of showing that the purchaser of the legal title had notice of the existence of the equitable title or that the purchaser of the legal title failed to pay value for the land, we cite Barnes v. Jamison, 24 Tex. 362; Baldwin v. Root, supra; Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Teagarden v. Godley Lumber Co., 105 Tex. 616, 154 S. W. 973; Catrett v. Brown Hdw. Co., 86 S. W. 1045; Brown Hdw. Co. v. Catrett, 45 Tex. Civ. App. 647, 101 S. W. 559; Ferguson v. Dodd, supra. In said case of Barnes v. Jamison the court was asked to instruct the jury that in order for the defendant Bundy to protect himself under his purchase from Walton he must have pleaded in his answer that Walton was an innocent purchaser for a valuable consideration without notice, and must prove that Walton had, in good faith, paid such valuable consideration. The court refused to give the instruction, and such ruling was approved by the Supreme Court on the ground that the legal title was in Bundy, and it was for plaintiff to show a superior title in himself. This case was cited with approval in the case of Teagarden v. Godley, 105 Tex. 616, 154 S. W. 973. No attempt was made to prove that Bowers had notice of Thos. B. Huling's first marriage, or that he failed to pay the recited consideration. If Bowers was chargeable with notice of the instruments under which Maverick claimed, such notice would not be notice of a defect in the title existing by virtue of the fact that Sarah Huling and her heirs had an equitable interest therein. Allen v. Anderson, 96 S. W. 54; Middleton v.

Johnston, 110 S. W. 789. The deeds to Bowers were not quitclaim deeds, but conveyed the land itself, and the mere fact that they contained only a special warranty would not establish that he was not an innocent purchaser. Richardson v. Levi, 67 Tex. 359, 3 S. W. 444; Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757. It is, of course, well settled that if a good title vested in Bowers as an innocent purchaser for value, such title could be availed of by parties holding under him, even though they had notice of Thos. B. Huling's first marriage. Baldwin v. Root, supra; Long v. Fields, 31 Tex. Civ. App. 241, 71 S. W. 774; Francis v. Cornelius, 173 S. W. 951, and cases therein cited.

We therefore conclude that defendants were entitled to recover said two surveys upon the record title, even though the power of attorney recited by James Huling be held insufficient, and his deed to Maverick, therefore, insufficient to pass the title of Thos. B. Huling and Sarah Huling. We are also of the opinion that the peremptory instruction must be sustained on the ground that defendants conclusively established title by limitation under the 5-year statute.

[13, 14] Appellants contend the court erred in overruling their special exceptions to the pleas of limitation interposed by defendants, which exceptions were directed at the failure to allege that the inclosure embraced 5,000 acres or less, and that the lands were not entirely surrounded by a tract or tracts owned, claimed, or fenced by another. The ruling was correct. Montague County v. Meadows, 42 S. W. 326. The exceptions mentioned in articles 5677 and 5678, R. S., are matters in avoidance of limitation, unnecessary to be negatived by the party who pleads limitation. Besides, said exceptions apply only to the 10-year statute, and not to the 5-year statute. We will therefore pass to the discussion of the evidence relating to limitation.

[15] In 1892 or 1893 the surveys in controversy were inclosed by P. W. Thompson. The fence was a four-strand barbed wire fence surrounding the lands on all sides, except where the same touched the Rio Grande river. The inclosure contained about 16,000 acres. The lands in controversy have been thus inclosed from 1892 to 1893 until the date of the filing of this suit. There were several tracts of land in the inclosure not owned by defendants, and those under whom they hold, and the owners of which exercised dominion over their said lands and grazed stock thereon, but the inclosure was made and maintained by Thompson and his successors in interest, and with the exception of the few tracts mentioned as owned by others they exercised dominion over the lands therein situated, including the lands in controversy, claiming the same as their own and making use thereof for grazing stock of their own or of tenants continuously from the time the inclosure was first made until the time the suit was

filed. It is also shown that a portion of the lands designated as vegas and lying along the Rio Grande was cultivated ·during all of this time, and cut off from the remainder of the pasture by a brush fence and other fences, which were opened up in the winter so as to permit stock to graze upon the vegas. Thompson and his successors in interest held said lands under deeds duly registered, and paid all taxes which accrued thereon during the time said lands were inclosed, as above stated. It was shown that the surveys in controversy were assessed by the estate of S. A. Maverick as early as 1871, and from 1877 to 1883, and from 1883 to 1889 by J. T. Lytle & Co., and thereafter by Thompson, but the payment of taxes prior to inclosing the land is not material on the issues of limitation, but is material on whether the facts were sufficient to put Thos. Huling on notice that Maverick and his successors in interest claimed all of the land.

As articles 5677 and 5678, R. S. 1911, relate only to the 10-year statute of limitations, the size of the inclosure will not prevent the acquisition of title under the 5-year statute. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 269; Cunningham v. Mathews, 57 S. W. 1115; Hardy Oil Co. v. Burnham, 58 Tex. Civ. App. 285, 124 S. W. 221; Harris v. Bryson & Hartgrove, 34 Tex. Civ. App. 532, 80 S. W. 105. It is contended by appellants, however, that as there were several tracts of land in the inclosure owned by others, limitation did not apply. Said parties recognized the rights of appellees and those under whom appellees claim to dominion over the surveys in controversy and the other lands not claimed by said parties, and Thompson and his successors in interest down to and including defendants claimed as their own the lands in controversy and other lands in the pasture, except the few tracts owned by the parties whose title was recognized. It is well settled that this kind of possession is sufficient under our statutes.. Taliaferro v. Butler, 77 Tex. 578, 14 S. W. 191; Church v. Waggoner, 78 Tex. 200, 14 S. W. 581; Parker v. Newberry, 83 Tex. 431, 18 S. W. 815; Harris v. Bryson & Hartgrove, 34 Tex. Civ. App. 532, 80 S. W. 105; League v. Stock Co., 2 Tex. Civ. App. 448, 21 S. W. 307.

It is also contended that the inclosure was not sufficient because the Rio Grande river formed the western side of the same. One witness testified that cattle could come across the river, and would do it if they were used to doing so. The witness Staffel, who, together with T. B. Jones, used. the lands 5 years, testified that during such time the river was a solid running stream, and they considered it sufficiently broad to turn cattle; that they had no trouble with cattle coming across from the Mexican side. He said that when the water was low cattle could cross, but they did not do it often; that ordinarily it was a sufficient barrier. The bot-

tom land, about 1,200 acres along the river, was cultivated every year since 1892,· and even prior thereto, and the river formed one side of the inclosure of such cultivated land. This shows that the river must have been a fairly effective barrier to stock, and in view of the other fences and the cultivation of the land the use of the river was such as to indicate' that it was relied upon to inclose the land. That appellants' contention is without merit is established by our decisions. Dunn v. Taylor, 102 Tex. 87, 113 S. W. 269; Randolph v. Lewis, 163 S. W. 649; Dawson v. Groesbeeck, 183 S. W. 866. ·

[16] It is also contended that plaintiffs and their father were joint owners and tenants in common with defendants and those under whom defendants hold, and that, therefore, limitation has not barred plaintiffs' claim. We have described all the conveyances under which defendants claimed. These conveyances were on record in Maverick county. They showed that defendants, and those under whom they hold, claimed to own the entire surveys. The tax rolls showed a similar claim. We therefore conclude that appellants' contention that plaintiffs and their father were not notified of the adverse claim is without merit. The registration of the conveyances, tax rolls, and payment of taxes, in connection with the use of the land, conclusively charged appellants and their father with such notice. Church v. Waggoner, 78 Tex. 200, 14 S. W. 581; Humphreys v. Edwards, 89 Tex. 518, 36 S. W. 333, 434; Miller v. Gist, 91 Tex. 335, 43 S. W. 263; Eastham v. Gibbs, 58 Tex. Civ. App. 627, 125 S. W. 372; Puckett v. McDaniel, 8 Tex. Civ. App. 631, 28 S. W. 360; Byers v. Carll, 7 Tex. Civ. App. 423, 27 S. W. 190; Jacks v. Dillon, 6 Tex. Civ. App. 192, 25 S. W. 645.

[17, 18] As plaintiff Maud Edgerton was 21 years of age on July 29, 1903, limitation began to run against her from that date, under the provisions of subdivision 3 of article 5684 (R. S. 1911), as amended in 1895. Plaintiff Thos. Huling was 21 years of age on July 26, 1906, and limitation of 5 years was completed in 1911, unless he was of unsound mind during a part of such period of time. This suit was filed September 28, 1914. Said plaintiff was not adjudged to be of unsound mind until July 13, 1915. On October 31, 1912, he executed an instrument, described by plaintiffs as a power of attorney and contended by defendants to be a deed, giving and granting to· C. E. Davis certain powers and rights with respect to lands owned by his grandfather. His sister testified he had been weak-minded all his life, but had grown worse the last 2 or 3 years. He had worked as a section hand and· in the sawmill business at $2 a day, and had belonged to the militia. This testimony and the other testimony is rather unsatisfactory so far as it is attempted to show unsound mind

for the first 5 years after attaining his majority. However, we regard the issue as immaterial because, at the time the lands were first inclosed in 1892 or 1893, the witness' best recollection being that it was in the fall of 1892, the father of appellants was alive, and his death did not occur until about 1900, so it appears that his title had been lost under the 5-year statute of limitation prior to his death. In addition, if limitation began at any time before his death it would continue to run, as it will not be interrupted by death, even though the heirs are under disability of minority or unsound mind. Johnson v. Schumacher, 72 Tex. 338, 12 S. W. 207; Harris v. Wells, 85 Tex. 312, 20 S. W. 68; Moody v. Moeller, 72 Tex. 635, 10 S. W. 727, 13 Am. St. Rep. 839; Howard v. Stubblefield, 79 Tex. 1, 14 S. W. 1044. It therefore appears, conclusively, that the disabilities urged in behalf of appellants cannot affect the result of this suit.

[19] We are of the opinion that the judgment of the trial court cannot be sustained on the theory that defendants conclusively proved title by virtue of the 10-year statute of limitation. The inclosure contained more than 5,000 acres exclusive of the lands in controversy, and while there is evidence of cultivation and use of portions of the surveys for agricultural purposes, such evidence does not show that as much as one-tenth of each of the three surveys or any of them was thus used, and while there is evidence of residence by tenants on the vega lands, the evidence does not show whether such residence was maintained upon the surveys in controversy or any of them, so it will not be necessary to determine whether there was such "actual possession" thereof as is meant in the concluding portion of article 5678.

The record fails to disclose that any objections were made by appellants to the giving of the peremptory instruction. This court has held in several cases that unless the record discloses that objections were presented before the charge is read to the jury, parties cannot assign the ruling of the court as error. Strong v. Harwell, 185 S. W. 676; McCall & Roemer, 186 S. W. 409; Pearce v. Supreme Lodge, 190 S. W. 1156. As the Courts of Civil Appeals are not in accord on the question, and a writ of error has been granted by the Supreme Court in the case of Walker v. Haley, 181 S. W. 559, because of such conflict, we have deemed it best to state our views upon the merits of the case.

[20] Assignments 22, 23, and 24 relate to matters which cannot affect our holding that the judgment should be affirmed. In addition, such assignments are not supported by bills of exception. A motion has been filed to amend the record so as to include a motion presented to the trial judge and filed below long after the record had been filed here, asking him to approve a bill of exceptions showing that C. E. Davis attempted to intervene when the testimony had been practically all introduced, and that his request had been denied, and that he had excepted to the ruling. The motion was refused, and the court indorsed thereon his reasons, which were that he had no authority to act at the time, and no means of verifying the bill, as he did not have the stenographer's transcript. No diligence has been used in presenting the motion in this court to amend the record, such motion being presented on the day preceding the submission of the case, and no excuse being offered for the delay, and we therefore overrule the same. Rule 22 (142 S. W. xii) for Courts of Civil Appeals. Hill v. Kincaid, 193 S. W. 185, decided by this court, but not yet officially reported. In addition, if the motion was granted, appellants would derive no benefit, because we would not have such a bill of exceptions before us as is required by our statutes, for the bill was not approved by the judge, nor was it verified as provided in articles 2067 and 1607, R. S. 1911.

All the assignments of error are overruled, and the judgment is affirmed.